# THE CHICAGO & NORTH WESTERN RAILWAY COMPANY

## *v.*

# THE BOARD OF SUPERVISORS OF BOONE COUNTY.

1. TAXATION—*must be uniform.* One portion of the tax payers of a county, owning taxable property, shall not be required to pay more taxes in proportion to its value, no matter how that may be ascertained, than another portion in the same county.

2. So if the assessors, regardless of the strict injunctions of the law, shall place a value upon property far below its real cash value, and such a practice goes on unchallenged, and is recognized by the authorities having special charge of the revenue of the State, that misconduct must also contain within itself the great and cardinal principle of uniformity.

3. SAME—*corporations stand on the same footing with individuals.* If the law is not strictly observed in the case of individuals, and their property is not assessed at its actual value, the property of a corporation, situate in the same county, should not be assessed at a greater proportional value than that of individuals, even though the enhanced assessment is not on the actual cash value of the property of such corporation.

4. SAME—*the rule does not apply as between counties.* But one county does not furnish a rule for another, in regard to the proportion of the value of prop-erty which shall be taken as the basis for assessment.

5. So that, on the trial of an appeal in the Circuit Court of one county, from the decision of the board of supervisors increasing the valuation upon property beyond that fixed in the schedule returned by the owner, it is not competent to give in evidence a schedule returned by the same owner, of property of the same character, situate in another county, and which placed a higher value upon it.

6. SAME — *of the rule by which to ascertain the value of property.*  The cost of an article is no evidence of its value on any certain day; and upon such a trial, the proof should be confined to its value at the time of the assessment, and the court should not permit evidence to be given of the first cost of the property.

7. SAME — *admissibility of evidence.*  Where the trial is in relation to the proper valuation to be put upon the property of a railroad company by the supervisors for purposes of taxation, a report, not under oath, made by the president of the company to the stock and bondholders, having reference, among other things, to the value of the property of the company, is not admissible in evidence.

8. The voluminous character of such a report, in this case, was such, that the bearing it had upon the issue before the court would have to be ascertained, if at all, by a careful analysis and dissection, to which a jury would scarcely be able to subject it.  Besides, if it contained any statements bearing on the issue, they could be proved by witnesses under oath.

9. And upon the trial of such an issue it is improper to admit evidence of an advance in the rate of freights upon the railroad.  That has nothing to do with the value of the property to be taxed.

10. EVIDENCE — *admissions.*  The voluntary admissions of a party, no matter when or how made, if made with knowledge of the circumstances, are proper to be given in evidence.

11. So upon the trial of the question as to the proper valuation to be put upon the property of a railroad company for purposes of taxation, it is competent to give in evidence, in behalf of the party adverse to the company, the deposition of the general superintendent of the road, which had been taken in another case and used by the company, adopting and acting on the statements therein as facts.

APPEAL from the Circuit Court of Boone county.

Messrs. SCAMMON, MCCAGG & FULLER, and Mr. GEO. C. CAMPBELL, for the appellants.

Mr. EMERY A. STORRS, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

16 — 44TH ILL.

This case, in its main features, does not differ from the case of *The Supervisors of Bureau County* v. *The Chicago, Burlington and Quincy Railroad Company, ante,* p. 229.

That case upholds the principle of uniformity of taxation, as the central and dominant object of the Constitution in the assessment of taxes, and requires that principle to be fully carried out, as far as practicable, in respect to all property, without regard to ownership. While it is not expected that entire correctness can be reached in imposing taxes, still an approximation, at least, to equality and uniformity, can and must be attained. We do not deem it necessary to add any thing to what was said in that case on this point. As in the Bureau county case, so in this, neither the property of individuals, nor of the railroad company, was assessed at its actual value, but far below it, varying from one-fourth to one-third of such value, and in very few cases, if any, exceeding one-third of its actual value. The supervisors, when sitting as a board to equalize valuations, had before them the several assessments of the assessors of the different towns in the county, which, upon their face, showed the valuation; and it was uniform as to those tax payers, and, in that view, wholly unobjectionable, however reprehensible and violatory of the law it may have been on the part of these assessors. That afforded no justification to the board, if they did so, to withdraw the property of appellants from the protection of this constitutional principle of uniformity, and, by the addition of twenty per cent on their rolling stock, and of fifty per cent on their fixed and stationary personal property, compel them to pay, thereby, more taxes on the valuation of their property than the individual citizen paid on his. Justice, and the observance of the constitutional principle of uniformity, would seem to require the same addition, or even, comparatively, a greater one, on the value of the property of the individuals.

It cannot be, that one portion of the tax payers in a county, owning taxable property, shall be required to pay more taxes in proportion to its value, no matter how that may be ascertained, than another portion in the same county. If the asses-

sors, regardless of the strict injunction of the law, shall place a value upon property far below its real cash value, and such a practice goes on unchallenged, and is recognized by the authorities having special charge of the revenue of the State, that misconduct must also contain within itself the great and cardinal principle of uniformity. No warrant is given, if the law is not strictly observed in the case of individuals, and their property is not assessed at its actual value, that the property of a corporation situate in the same county, shall be assessed at greater proportional value than that of individuals, even though the enhanced assessment is not on the actual cash value of the property of such corporation. The same rule which is applied to individuals, justice and the Constitution demand shall be applied to corporations. To demand of appellants that they should schedule their property at its cash value, while individuals may schedule their property at one-third, or less, of such value, would be to demand of the former three times the amount of taxes demanded of the latter.

As we said in the Bureau county case, such a proposition is so monstrous as to be indefensible by fair argument. Such discrimination is condemned, not only by the Constitution, but by the indignant, yet no less just, judgment of an honest people. On the fact, however, we express no opinion, as the case will go to another jury.

We now come to the points of difference between the Bureau county case and this. In that, the judgment of the Circuit Court was in favor of the railroad company, holding that their schedule was correct, and in compliance with the statute and the practice under it which had obtained for such a long series of years, unchallenged and unquestioned.

And here we might say, more explicitly than was said in that case, that a long, uniform and unchallenged practice under a law, is strong evidence of the real meaning of the law. To the hoary maxim, *contemporanea expositio est optima et fortissima in lege,* is accorded full force in all courts, and we have ever rendered it due respect.

In this case, the additional per cent imposed by the board

of supervisors of Boone county was declared legal by the Circuit Court, and a judgment was rendered against the railroad company for the same.

This appeal is brought to reverse this judgment, on the grounds we have discussed, and on the further ground, that improper evidence was admitted on behalf of appellees to the injury of appellants.

It appears from the record, that on the trial of the appeal from the board of supervisors, the court, against the objections of appellants, permitted appellees to show to the jury the return made by appellants to the county clerk of McHenry county for 1865, of their fixed and stationary personal property in that county, their track running through a portion of that county. By this schedule, it appeared appellants had returned the valuation of their track therein at $3,000 per mile, and the argument was, inasmuch as the track in Boone is in as good repair, and capable of doing the same proportionate amount of business, as that part of it running through McHenry county, therefore, the value must be the same, and it should be assessed accordingly. This, in our judgment, does not follow.

So far as the return in McHenry county is concerned, *non constat*, but that it was proper and necessary to place that valuation upon it, in order to put it on the basis established by the assessors of that county for assessing the property of individuals therein.

What may have been just in McHenry county may not have been just, at the time the return was made by appellants, in Boone county. So that they returned their property as high as individuals in Boone county, they complied with the law as enforced against the tax payers of Boone, and the same of McHenry county. Neither county furnishes a rule for the other. So that the return of the valuation in McHenry was wholly irrelevant to the question then before the court. The appellants were taxed, it is to be presumed, in McHenry county, on the same basis of valuation individuals in that county were taxed, and this may have been vastly different

from that adopted by the assessors in Boone. In this connection, the second instruction for appellees was wrong.

It is also complained by appellants, that improper evidence of the value of their rolling stock, and fixed and stationary personal property, was admitted, to their prejudice.

This evidence consisted of a deposition made by George L. Dunlap, the general superintendent of this road, in a case pending in the Circuit Court of the United States, to which these appellants were a party. The statements in that deposition had been used by appellant in that case as facts; they had adopted them, and acted on them as facts; they had admitted them to be true, and they are not at liberty now, in this case, to repudiate them. The voluntary admissions of a party, no matter when or how made, if made with knowledge of the circumstances, have always been admitted in evidence, as this court said in *Robbins* v. *Butler*, 24 Ill. 427.

On this point appellants also complained, that certain mortgages executed by the president of the company to S. I. Tilden, the one bearing date January 1, 1863, and the other dated September 1, 1864, were admitted in evidence to their prejudice.

These mortgages, we understand, were what are known as equipment mortgages, and were delivered by the appellants to secure the bonds of the company which had been executed for the rolling stock. It would seem, an extensive line of road was equipped on credit, the bonds having a long time to run, and were issued some time prior to 1865, and furnished no evidence of the value of this stock in 1866. What property cost three years ago affords no evidence of its value to-day, and least of all when the equipment of a railroad is concerned. It is well known, and these mortgages prove it, that their equipment is purchased on long time, bonds are issued therefor, and mortgages executed to secure their payment at maturity. What a railroad company may be induced to promise for such equipment affords no evidence whatever of its actual cash value two or three years thereafter. And so with most descriptions of personal property, that have not in themselves elements of

improvement and appreciation. These engines had been in use some years, and, though repaired by the outlay of large sums of money, were, notwithstanding, depreciated, the actual annual depreciation being, as some of the witnesses stated, about fourteen per cent. Though repaired constantly, and serviceable, they were not so valuable as new ones, and, in speaking of such property, nothing would tend more to mislead a jury than evidence of what it cost. The cost of an article is no evidence of its value on any certain day. Nor does the necessity of the case require they should be admitted, for it is well understood, any maker of such machines is entirely competent to speak knowingly of their cash value at the time they were listed by the company for taxation. In the case of an individual who may have purchased a carriage which has been in use three years before he is called on to list it for taxation, the injustice of holding him to its cost will be apparent; or, if the carriage has been unlawfully taken, and converted to the use of another, it is very certain the owner, on trial of his action for damages therefor, would be confined to proof of its value when thus unlawfully taken and converted, and no court would permit evidence to be given of its first cost, by reason of the tendency of such evidence to mislead the jury.

In this connection, the appellees' third and fourth instructions were erroneous.

Whatever may have been the original cost of the rolling stock, the question for the jury to determine was, not that, but was it assessed at a valuation disproportionate to that of other tax payers; and directing their attention, by these instructions, to a fact not properly before them, was calculated to mislead them from the great question presented in the controversy, viz., was the principle of uniformity observed by the board of supervisors?

As regards the report of the president, made in October, 1865, by order of the board of directors, after the consolidation of these several different roads, it must be observed that the report was made to the stock and bond holders of the company, and perhaps, in some degree, for effect. It was not

on oath, and embraced the transactions of one of the greatest enterprises of modern times; it is very voluminous, and the bearing it had upon the issue before the court had to be ascertained, if at all, by a careful analysis and dissection, to which the jury would scarcely be able to subject it. Besides, the statements contained in it, affecting the question before the court, could be proved by witnesses under oath. We are of opinion, such a document was not legitimate evidence, and its introduction was well calculated to mislead the jury and confuse them. The case of the *Ch. B. & Q. R. R. Co.* v. *Coleman*, 18 Ill. 297, does not conflict with the views we have here expressed. The question in that case was as to the admissibility of the acts and statements of the president of the company, whereby to charge the company on a contract for carrying the iron for the road, and his authority to make the contract.

We concur in all that is there said on this question. The admissions of the president were germane to the case before the jury, and strictly applicable to it. They were made in respect to the transaction which was the subject matter of the suit, and clearly admissible, as the authorities cited fully show. This report of Ogden was not in relation to the matter then on trial before the jury, but was a general statement of the affairs of the company for the past years, and with no special statement of the real value of any of the articles of property contained in his report. It abounds with statements of the cost of their equipment, and is open to the same objection we have sustained to the evidence sought to be furnished by the mortgages.

The appellants also complain, that injustice has been done them by the court admitting testimony going to prove an advance in the rate of freights on their road since 1865. This inquiry was foreign to the question before the jury, and should not have been allowed. It had nothing to do with the value of the property to be taxed. It is true, this court said, in the case of *The State* v. *The Ill. Cent. R. R. Co.*, 27 Ill. 68, in discussing the questions presented in that case, which were very different from those in this case, that company being

taxed, by its charter as a corporation, in seeking to ascertain its value for taxation purposes, "the inquiry should be, what is the property worth to be used for the purposes for which it is constructed?" Were the appellants taxed on their income, the inquiry would be quite proper.

This testimony could have answered no other purpose than to excite the prejudice of the jury.

We approve the instructions given on the question of uniformity, but are of opinion that the second instruction asked by appellants and refused, should have been given. It states in clear and most explicit terms the great principle which underlies the case, that is, uniformity. The matter of this instruction is not fully contained in those given.

For these errors appearing in the record, the judgment of the Circuit Court must be reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*