## Gus Vogel, Defendant in Error, v. Perry W. Murphy, Executor, Plaintiff in Error.

### Gen. No. 5,747.

1. CONTRACTS, § 25*—*right to recover for services rendered in the family relation.* Where services are rendered by or to one admitted into the family relation, the law presumes that such services are gratuitous and that the parties do not contemplate payment therefor; but this presumption may be overcome by proof, either of an express contract or of facts and circumstances which show that both parties, at the time the services were rendered, intended pecuniary recompense.

2. EXECUTORS AND ADMINISTRATORS, § 214*—*when estate liable for board and lodging of deceased.* A claim by a husband of a daughter of deceased for board and lodging of the deceased, *held,* established by evidence showing that compensation was intended therefor where accounts had been kept of the time deceased spent with claimant and checks were drawn by deceased in favor of claimant's wife for board.

3. EXECUTORS AND ADMINISTRATORS, § 269*—*when evidence admissible to show an admission of deceased to pay board.* Evidence of what claimant's wife said to deceased concerning payment of board, when coupled with his answer, is admissible to show an admission by deceased that he ought to pay board.

4. APPEAL AND ERROR, § 460*—*when exclusion of evidence not reviewable.* Refusal of court to permit a conversation to be introduced in evidence, not reviewable where no offer was made of what was proposed to be proved by it.

Error to the Circuit Court of McHenry county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913.

V. S. LUMLEY, for plaintiff in error.

DAVID R. JOSLYN, for defendant in error; E. H. WAITE and PAUL J. DONOVAN, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

Defendant in error filed a claim against the estate

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

of Andrew W. Murphy, deceased, in the County Court of McHenry county. On a jury trial, the claim was allowed at two hundred and sixty-three dollars. The claimant appealed to the Circuit Court, where, upon a jury trial, the claimant had a judgment for one thousand and thirty-eight dollars, to be paid as a claim of the seventh class. From that judgment the executor prosecutes this writ of error.

The testator died on July 24, 1910, at the age of ninety-three. He was the father of claimant's wife. From April 4, 1902, until his death, he lived most of the time with claimant, but made occasional visits to other children and spent several months with children in Minnesota. This claim is for his board, lodging and washing, while he was living with claimant's family. Where services are rendered by or to one admitted into the family as a relative, the presumption of law is that such services are gratuitous and that the parties do not contemplate payment therefor. But this presumption may be overcome by proof, either of an express contract or of facts and circumstances which show that both parties, at the time the services were rendered, intended pecuniary recompense other than that which arises naturally out of the family relation. *Heffron v. Brown,* 155 Ill. 322. The executor offered in evidence sixteen checks, dated during said period, ranging in amount from one hundred dollars to twelve dollars drawn by the testator in favor of claimant's wife on the State Bank of Woodstock and paid by said bank on the indorsement of claimant's wife, upon each of which checks testator had written "for board" or "on board" or "board." It was also proved that, at the request of claimant, one of claimant's daughters set down on pieces of paper or in an almanac the date when testator began living in claimant's family and thereafter kept track in that way of the time which he spent in claimant's home. The checks, the notations thereon by testator and the keeping of an account of the time testator lived in that

family show clearly that the parties intended pecuniary compensation for what the testator there received.

The daughter of claimant, Jennie Vogel, who kept the time on pieces of paper, testified that after her grandfather died she copied these various entries into a book and then threw into the waste basket the pieces of paper and the almanac in which she had originally set down the time. She testified that she had the book in court, that she had not figured it up exactly, but that the time was about fifty-five months; and again that she thought it was fifty-five months all together. The executor argues that this destruction of the original entries rendered incompetent the book into which they were copied. Without regard to the correctness of that position, the book was not offered in evidence nor did the witness say that she had no recollection of the time except from the book. The fair inference from her testimony is that it was her recollection, as refreshed by the book, that the time was about fifty-five months.

Gusta Vogel, another daughter of claimant, testified that testator lived in their house all of the time during the last six or seven years of his life, except a few months he spent in Minnesota; that during that time she heard two conversations between her father and her grandfather, one while they lived in Woodstock and another at an earlier time when they were on a farm, in each of which her father told her grandfather that he wanted her grandfather to pay his board, and mentioned twenty-five dollars per month, and that her grandfather assented thereto. Jennie Vogel testified that she heard a conversation between her mother and her grandfather, in which her mother told her grandfather that he had to pay board because he was aware that he frequently gave money to his sons, Perry and Asa, and she "saw no reason why he should stay at our home and pay nothing and they get the benefit of that money;" that her mother mentioned twenty-

five dollars per month and said she thought that was
no more than was right and what he ought to pay,
and that he said "all right." This tended to prove a
contract to pay at the rate of twenty-five dollars per
month. The dates of these various conversations are
not given, but the conversations would naturally be
understood to refer to all the time the testator lived
there after he went there to live on April 4, 1902. The
checks during the latter part of the time were made
out about the middle of each month consecutively and
were for twelve dollars each, from which the executor
argues that, if there was a contract, it must have been
for twelve dollars per month. It may be that such
was the fact, or that the testator had changed his
mind and concluded to pay no more per month, or it
may be that the testator intended to pay about one-
half down and to leave the rest until after his death.
The notations on the checks did not say they were in
full for board. It was for the jury to consider the
amount of these several checks with all the other evi-
dence in determining what the contract was. Asa
Murphy and Perry W. Murphy, the executor, sons of
the testator, testified that on the evening after the
funeral, at the home of claimant, Asa, who was about
to leave for his home in Minnesota, stated that he had
no claim against the estate and asked the claimant if
he had any claim against the estate and the latter an-
swered "Not a cent," and then asked Perry if he had
any claim and he said he had not. Claimant, a com-
petent witness to what occurred after testator's death,
testified that no such questions were asked and that
he made no such reply. His two daughters testi-
fied that they were present and heard no such con-
versation and no conversation on the subject of claims
against the estate. In this conflict of testimony on
this subject, the verdict of the jury, approved by the
trial judge, must stand.

The executor argues that it was error to permit
proof of what claimant's wife said to the testator and

his reply, unless she was acting as the agent of her husband and making a contract for him at that time. This is a misapprehension of the purpose of the testimony. She could not make any declarations binding upon her husband, but the material thing was not what she said but the answer by the testator. His answer, coupled with her previous declaration, was equivalent to an admission by him that he ought to pay his board and that twenty-five dollars per month would be reasonable. An admission by a party against his interest in a matter material to the controversy is always competent evidence against him, no matter to whom the admission was made. *Robbins v. Butler,* 24 Ill. 387; *Chicago & N. W. Ry. Co. v. Board Sup'rs Boone Co.,* 44 Ill. 240; *Brown v. Calumet River Ry. Co.,* 125 Ill. 600; *Second Borrowers & Investors Bldg. Ass'n v. Cochrane,* 103 Ill. App. 29; Jones on Evidence (2d Ed.) sec. 236; 2 Chamberlayne on The Modern Law of Evidence, secs. 1234-1237. As said in the latter authority, the principle is "if a party has chosen to talk about a particular matter, his statement is evidence against himself."

The proof showed not only that the testator had ordinary board and lodging and washing in claimant's home, but also that he was feeble and needed a great deal of care concerning his bed and clothing, because he had bowel trouble, and his extreme old age was also a matter to be considered. No witness testified as an expert what such services were worth, and it is contended, not only that the evidence of a contract is insufficient, but also that there is no evidence upon which there could be a recovery under a *quantum meruit.* We are of the opinion that the assent of the testator to the proposition that he ought to pay twenty-five dollars per month for his board was evidence from which the jury might reasonably conclude that what he received in that home was reasonably worth twenty five dollars per month.

The executor testified that he had two conversations

with the claimant's wife in regard to her father living with her. An objection by claimant to said conversation was sustained. It is argued that this was error. It is obvious that Mrs. Vogel could make no statement binding upon her husband, unless she was his agent, and the executor strenuously insists that there is no evidence of her agency; but if it were otherwise, no error appears. The executor must make it appear that he was injured by the refusal to permit the conversation to be introduced. He should have made an offer of what he proposed to prove. Not having done so, we cannot know that the testimony proposed would have been material. *Anthony Ittner Brick Co. v. Ashby*, 198 Ill. 562; *Gorza v. Peoria Ry. Co.*, 175 Ill. App. 117.

We find no material error in the giving of the instruction complained of. The judgment is affirmed.

*Affirmed.*