William Fetzer, Appellee, v. Chicago Title and Trust Company and Standard Trust and Savings Bank, Administrators of Estate of Edwin B. Jennings, Deceased.

Appeal of Chicago Title and Trust Company et al., Appellants.

Gen. No. 39,794.

Opinion filed May 11, 1938.

GEORGE GILLETTE, CASTLE, WILLIAMS & MCCARTHY and WILHARTZ & HIRSCH, all of Chicago, for appellants; NORBERT B. TYRRELL, NEIL WILLIAMS and EUGENE H. NIRDLINGER, of Chicago, of counsel.

SIMON T. SUTTON, of Chicago, for appellee.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

Defendants bring this appeal from a judgment entered in the circuit court in favor of plaintiff for the sum of $25,000 in a suit in assumpsit, wherein the plaintiff alleged the loss of personal property belonging to him of the value of $100,000, through the negligence of defendants as bailees. Motions for a directed verdict and in arrest of judgment were made and overruled.

Plaintiff alleges that his goods were in a factory building at Springfield, Illinois, to which defendants obtained title in 1925, through foreclosure of a first mortgage. By his second amended declaration filed February 11, 1931, and his bill of particulars filed May 23, 1931, plaintiff's action is against the present defendants only.

The second amended declaration alleged the ownership of the personal property by the plaintiff and the ownership of the real estate and premises by the defendants through foreclosure proceedings; that the receiver had charged the plaintiff $100 per month for the storage of the goods up to October 28, 1925, when the premises were sold to the defendants who charged plaintiff a like sum of $100 a month for storage.

Plaintiff's theory of the case is that under the issues made by the pleadings and the facts in the record, defendants were in complete possession of the building containing plaintiff's property, had knowledge of the fact that plaintiff's property was in said building and they became bailees of said property; that defendants became bailees for hire under an agreement, defendants' Exhibit 1, whereby plaintiff was to pay $100 per month for the use and occupation of the premises and in addition to this the defendants became gratuitous bailees under all the facts in the record and were bound to exercise the reasonable care which a prudent man

takes of his property; that the question of care is one of fact for the consideration of the jury.

Defendants' theory of the case is that even if plaintiff did own some goods contained in said factory at the time defendants found it necessary to take title under their master's deed, still the relationship of bailor and bailee never existed between plaintiff and defendants; that the defendants never undertook the care, custody or possession of plaintiff's goods and never had any duty to watch over, guard or otherwise protect said goods from loss or to account to plaintiff therefor; that plaintiff did not rely upon defendants in that respect, but, on the contrary, himself undertook such care and protection, and that if such goods were lost, it was by reason of plaintiff's own acts and negligence.

From the evidence it appears that in 1908 William Fetzer, plaintiff herein, constructed a factory in Springfield, Illinois, where, until 1918, he conducted the business of manufacturing farm machinery under the names of Fetzer & Company and McSherry Company; that early in 1918, he sold the factory building and grounds to one Charles A. McCann, who commenced the business of manufacturing dairy equipment under the name of National Dairy Manufacturing Company; that McCann and his wife on May 22, 1918, executed a first mortgage for $37,500, covering the real estate and also personal property used in connection with the business of National Dairy Manufacturing Company.

The evidence further shows that this first mortgage (plaintiff's Exhibit 3) was purchased by Edwin B. Jennings of Chicago, Illinois; that later on September 17, 1918, Fetzer sold to McCann various articles of machinery, tools, supplies, etc., and took from McCann a second mortgage on the real estate, and, in the same instrument, a mortgage on the machinery, etc., therein

described and so then sold to McCann (plaintiff's Exhibit 4); that the machinery, etc., sold to McCann in September, 1918, was that used in connection with the McSherry Company line; that a few months later Fetzer sold to McCann the balance of the factory machinery, being that used in connection with the Fetzer & Company line; that in connection with this last sale Fetzer took from McCann a third mortgage.

The evidence further shows that McCann occupied the factory until 1922, when Fetzer obtained a decree of foreclosure against him under the second mortgage; that under these foreclosure proceedings which under the law then in force were held 15 months after the decree, Fetzer became the purchaser of the property described in the mortgage for the sum of $550, and master's deed issued to him under date of July 10, 1923; that Fetzer thereby became the owner of the personal property covered by said mortgage and of the real estate or equity therein, said real estate being subject to Jennings' first mortgage.

The evidence further shows that the personal property and machinery was left in the premises for several years after July 10, 1923, the date Fetzer purchased said personal property; that defendants' representatives wrote a letter to plaintiff dated November 11, 1925, notifying plaintiff to remove said property from said premises by December 1st, and in case plaintiff failed to do so that they would charge him for the use and occupation of said premises, until further notice from them, the sum of $100 per month, but that no answer was made by plaintiff to said letter.

Plaintiff offered in evidence a list prepared by himself of the personal property which was in the building, and opposite each item the value thereof was inserted, which made a total of upwards of $100,000.

Evidence was admitted as to the cost of the personal property when originally purchased by plaintiff. It

appears that much of this property consisted of raw materials, patterns and manufactured property which consisted of specialties and had no general market value.

Defendant claims numerous errors were made, which were preserved by proper motions and we shall consider them in inverse order.

We shall first consider one of the instructions complained of, given on behalf of plaintiff, which reads as follows:

"The Court instructs the jury that if, from the evidence of the case, and under the instructions of the Court, the jury shall find the issues for the plaintiff and that the plaintiff has sustained damages as charged in the declaration, then, to enable the jury to estimate the amount of such damage, it is not necessary that any witness should have expressed an opinion as to the amount of such damage, but the jury may themselves make such estimate from the facts and circumstances in proof and by considering them in connection with their knowledge, observation and experience in the business affairs of life."

As we view it, there was no proof in the record to justify the giving of such an instruction. The property which plaintiff claims to have lost was not comprised of well-known articles which would have a ready market value or price with which the average juror might be familiar through previous experience or pertaining to which he could obtain knowledge by observation. There was no evidence submitted as to the physical condition of the property at the time of the claimed loss, so that the testimony regarding the original cost, which was the only testimony as to value, even if admissible in evidence at all would not be a very reliable basis upon which to fix the value several years thereafter. The sole damage claimed here was for the value of the property and when the jurors were told in fact

by the above instruction that plaintiff would not have to prove the value of the property, less natural deterioration from use, age, etc., they were misled. The jurors were also told that they might make an estimate of the values in connection with their knowledge, observation and experience in the business affairs of life. This left the jurors to guess as to just what might have been the value of the property at the time of the claimed loss.

In *Chicago & N. W. Ry. Co. v. Boone County Board of Supervisors,* 44 Ill. 240, the court in discussing the value of certain engines which had been used some years, on page 246, said: "Though repaired constantly, and serviceable, they were not so valuable as new ones, and, in speaking of such property, nothing would tend more to mislead a jury than evidence of what it cost. The cost of an article is no evidence of its value on any certain day. Nor does the necessity of the case require they should be admitted, for it is well understood, any maker of such machines is entirely competent to speak knowingly of their cash value at the time they were listed by the company for taxation. In the case of an individual who may have purchased a carriage which has been in use three years before he is called on to list it for taxation, the injustice of holding him to its cost will be apparent; or, if the carriage has been unlawfully taken, and converted to the use of another, it is very certain the owner, on trial of his action for damages therefor, would be confined to proof of its value when thus unlawfully taken and converted, and no court would permit evidence to be given of its first cost, by reason of the tendency of such evidence to mislead the jury."

As heretofore stated we believe the instruction which we have quoted would not do otherwise than mislead the jury, telling them in fact that they had the right to fix the value of the property alleged to have

been lost, based on something quite separate and apart from the evidence.

Many other points are raised in this case, but inasmuch as the cause must be retried, we shall refrain from passing upon any errors that may have been made as they may be corrected when the case is again tried.

We are deciding at this time nothing other than that it was error for the trial court to give the instruction which we have quoted in this opinion.

For the reasons herein stated, the judgment of the circuit court is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

HEBEL, P. J., and HALL, J., concur.