(No. 12580.—Reversed in part and remanded.)

THE PEOPLE *ex rel.* George E. Little, County Collector, Appellant, *vs.* THE ST. LOUIS MERCHANTS BRIDGE COMPANY, Appellee.

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. TAXES—*what may be considered by board of review in estimating value of railroad bridge.* Where all the capital stock of a bridge company is owned by the railroads using the bridge, which is operated on a cost basis for the benefit of said railroads and has no market value, in assessing the tangible property of the bridge company the assessor and the board of review will not be limited to the actual value of the material of which the bridge is composed but may take into consideration their own knowledge of the situation and compare the value and earning power of the bridge with the valuation of other property of the same character.

2. SAME—*mere fact of over-valuation will not establish fraud.* The mere fact of over-valuation will not establish fraud, but the valuation may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive.

3. SAME—*when assessment of capital stock and franchise of a bridge company above tangible property is proper.* Where all the capital stock of a bridge company is owned by the railroad companies using the bridge on a cost basis for their own benefit, the fact that no dividends were paid and that there were no earnings above interest, taxes and repairs is not conclusive that the capital stock and franchise have no substantial value in excess of the tangible property, and, in the absence of evidence of the value of the service of the bridge to the beneficial owners, an assessment on a valuation of the capital stock, including the franchise, fixed by the State Board of Equalization on its own investigation is proper.

4. SAME—*presumption is in favor of assessment by board of equalization.* Until the contrary is shown, the Supreme Court is bound to presume that the State Board of Equalization acted upon sufficient information to justify its assessment.

5. SAME—*when suspension of rule by board of equalization is not fraudulent.* The State Board of Equalization does not act arbitrarily in suspending its rule as to the time of hearing the reports of its committees, which it has adopted for the convenience of the members of the board and which is not a rule regarding the valuation of property, and an assessment made upon the hearing of the reports of committees after the suspension of said rule by a vote in accordance with other rules of the board does not show that the board did not exercise its judgment nor that the assessment was fraudulently made.

6. SAME—*tax on capital stock is personal property tax.* A tax on the capital stock of a corporation is a personal property tax.

7. SAME—*when objection to sale of real estate for capital stock tax is properly sustained.* Under section 255 of the Revenue act a tax on personal property cannot be charged against real property except in case of removals or where the tax cannot be made out of personal property, and where the town collector's book does not show any notation of the reason for failure to collect a capital stock tax as required by section 170 of said act, an objection to the county collector's application for the sale of the real property of the corporation is properly sustained.

8. SAME—*collector seeking judgment against real property for personal property tax must designate particular real property to be charged.* Under section 183 of the Revenue act a county collector who seeks a judgment for the sale of real property to pay a personal property tax must select some particular tract of real property to be charged with the delinquent personal property tax and designate such tract in his application and advertisement for judgment and sale, and the statute is not complied with where there is no statement that a personal property tax is to be charged on any of the real property.

APPEAL from the County Court of Madison county; the Hon. OTTO W. LONGENECKER, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, and JOSEPH P. STREUBER, State's Attorney, for appellant.

KRAMER, KRAMER & CAMPBELL, (T. M. PIERCE, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

In 1916 the board of review of Madison county increased the assessment of the tangible property of the St. Louis Merchants Bridge Company from $700,005, at which it had been fixed by the board of review in 1915, to $1,560,000. The bridge company paid the tax on the original assessment but objected to the excess on the ground that the increase was not based upon any reasonable theory of valuation, but was unjust, arbitrary and unreasonable and so grossly excessive as to be fraudulent and an unjust and unlawful discrimination against the objector's property. The objection was sustained by the county court, but the judgment was reversed for error in refusing a change of venue and the cause was remanded. (*People* v. *St. Louis Merchants Bridge Co.* 282 Ill. 408.) In 1917 the State Board of Equalization assessed the capital stock, including the franchise, of the St. Louis Merchants Bridge Company, and upon an application by the collector of Madison county for an order of sale the company objected to the payment of the tax extended on such assessment because it was arbitrarily, fraudulently and unlawfully made in violation of the rules of the board and was so grossly excessive as to be fraudulent. The part of the tax of 1916 objected to amounts to $16,192.57, the bridge company having paid $13,190.43, and the tax of 1917 in dispute amounted to $43,020.01. After the remandment of the first case a stipulation was entered into for the consolidation of the two cases. They were heard together and separate judgments were entered sustaining the objection and denying judgment, from which the People have appealed.

The tangible property assessed in 1916 consisted of that part of the bridge of the appellee extending across the Mississippi river from Venice, in Madison county, to St. Louis, east of the middle of the river, together with the approach to the east end, including 23.33 acres of land. The St. Louis

Merchants Bridge Company is an Illinois corporation, with an authorized capital stock of $2,000,000, of which $1,500,-000 has been issued. Its bridge was completed in 1890 and was paid for by a bond issue of $2,000,000. One-half of the bridge and its approach are in Illinois. The full value of the property of the company in Illinois was assessed in 1903 and in 1907 at $600,000. In 1909 and 1910 750 feet of timber trestle was replaced with steel and the assessment was increased $50,000. In 1911 the supervisor of assessments raised the assessed value of the property to $1,500,000, but because the increase in the assessment was made without notice to the company it was held invalid. (*St. Louis Merchants Bridge Co.* v. *Eisele,* 263 Ill. 50.) In 1915 the supervisor again assessed the property at $1,500,000, but the board of review reduced the assessment to $700,005. In 1916, after notice to the company and a hearing, the board of review increased this amount to $1,560,000, and it is this increase which is objected to.

On the hearing before the board of review the bridge company introduced the evidence of engineers to show that the bridge and approaches, under normal conditions of material and labor value, could be reproduced for $2,000,000, and that since its construction it had suffered a depreciation amounting to twenty per cent of its value, leaving in Illinois a value of $800,000, in addition to the value of tracks, amounting to $40,000, and real estate valued at $46,660. It was shown that in the assessment of property generally the value was fixed at seventy per cent of the actual value, and this proportion of the full value of the bridge company's property would amount to $620,662, which the appellee contends is the proper full valuation of its property for taxation. The assessor for Venice township from 1911 to 1916, and the county treasurer and supervisor of assessments of Madison county, also testified on that hearing as to their investigations upon which their assessments had been made. All the evidence heard by the board of review

was introduced on the hearing of this cause and additional evidence was offered by both parties. Evidence was introduced to show that the bridge between East St. Louis and St. Louis, known as the Eads bridge, was valued for taxation in Illinois at $3,500,000; that substantially the same amount of railroad traffic was carried over the two bridges, but the Eads bridge also carried wagon roads and street cars. There was no evidence of the cost of the Eads bridge. The bridge of the appellee had no market value, and there was evidence tending to show that other points in the neighborhood where it was built could be used for the construction of bridges, so that there was no value because of location. The appellee contends that the bridge had no value for taxation other than the cost of the structure minus its depreciation, while the People contend that it had a value as a going concern apart from the cost of construction. In *Keokuk and Hamilton Bridge Co.* v. *People,* 161 Ill. 514, we said: "The fair cash value of the bridge is not necessarily restricted to what would be the present cost of the material and labor that would be actually used in its construction if it were now being built. The bridge as a bridge,—as a completed structure,—as a property already in actual existence and in actual and profitable use,—has a value other than the total of the values of the earthwork, masonry, iron, timber, lumber and labor required in its construction. It is a property *sui generis,* has no market value, and is not affected by the principles of supply and demand; and evidence of what it did, in fact, cost to construct it, or opinions of what it would now cost to construct it, do not conclusively establish its real and actual value. (*Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229.) It is property the value of which is largely determined by its location, its surroundings and the use that can be and is made of it."

While the bridge of the appellee might be replaced for $2,000,000, yet its location and its relations with other cor-

porations are such that steam railroads entering St. Louis find it to their advantage to send a number of freight and passenger cars and a tonnage of freight over it substantially the same as over the Eads bridge. The St. Louis Merchants Bridge Terminal Railway Company was organized for the purpose of connecting with the west end of appellee's bridge and the Madison, Illinois and St. Louis Railway Company for the purpose of connecting with the east end, and the proposed connections were made. On August 1, 1893, the appellee leased all its property to the Madison, Illinois and St. Louis Railway Company for a period of forty years, for a consideration that the lessee should pay the annual interest charge of $120,000 upon its bond issue of $2,000,-000, pay the taxes, keep the property in repair and pay to it three-fourths of the net income that should be derived from its use. All the stock of these three companies is owned by the Terminal Railroad Association of St. Louis, all of the stock of which is owned by fourteen trunk railways and all of the facilities of which are required by a decree of the United States court to be open upon equal terms to others desiring to use them. (*United States* v. *Terminal Railroad Ass'n,* 224 U. S. 383; 236 id. 194.) The appellee's bridge is operated on the basis of charges fixed to produce only the cost of operation, and therefore no earnings have accrued above the charges for interest, taxes and repairs. The investment in the bridge represents about four per cent of the total investment of the Terminal Railroad Association. While the appellee's property produces no income above its fixed charges for interest, taxes and repairs, yet that condition is brought about, not by the fact that the operation of the bridge is not profitable, but by the fact that the real beneficial owners of the bridge, the fourteen railways which own the stock of the Terminal Railroad Association, prefer not to charge any profit from the operation of the bridge for the benefit of the bridge company or any of the intervening corporations but to take

the benefit to themselves in the decreased cost of opera-
tion.   The value of the service of the bridge is therefore
divided among the fourteen railway systems constituting the
Terminal Railroad Association, but the value of the prop-
erty, based upon its earning capacity, is not for that reason
diminished.   As the bridge has no market value its earn-
ing power is an important element in determining its actual
value.   There is no evidence tending to show that the con-
sideration for the lease is a fair value for the use of the
bridge when it is purposely so used as to produce no in-
come over and above the interest, taxes and repairs.   Dur-
ing the year 1916 302,005 loaded freight cars were hauled
over the appellee's bridge and 320,578 over the Eads bridge,
and the appellee's bridge carried 7,477,672 tons of freight,
while the Eads bridge, which is also owned by the Terminal
Railroad Association, carried 6,977,874 tons.   The total car
movement over the Eads bridge and the appellee's bridge in
that year amounted to 635,763 and 616,624 cars, respec-
tively.   Thus it appears that the Merchants bridge (the
bridge of the appellee,) is as well adapted to the purpose
of its owners as the Eads bridge, which is assessed in Illi-
nois at $3,500,000.

Fraud cannot be presumed but must be proved by suffi-
cient evidence.   The mere fact of over-valuation will not
establish it, but the valuation may be so excessive and made
under such circumstances as to justify the conclusion that
it was not honestly made and was known to be excessive.
The assessor and the board of review had the right to take
into consideration their own knowledge and the informa-
tion acquired by their investigations and to compare the
valuation of the bridge with the valuation of other prop-
erty of the same character and to form an honest judgment
as to the actual value of the bridge.   The evidence here is
not sufficient to show that the board of review acted fraudu-
lently in the valuation of the appellee's property.

The principal objection to the capital stock tax of 1917 is that the assessment by the State Board of Equalization was fraudulent. There had been no such assessment prior to 1917. The full value of the tangible property of appellee was fixed by the local assessor in that year at $700,000. At a hearing before a joint meeting of the railroad and capital stock committees of the State Board of Equalization counsel for the appellee made a statement, which was accepted as evidence, that the authorized capital stock of the appellee was $2,000,000, of which $1,500,000 had been issued, which was owned by the St. Louis Merchants Bridge Terminal Railway Company, the capital stock of which was owned by the Terminal Railroad Association; that the appellee's capital stock had never passed for any valuable consideration, had never been sold upon the market, had no market value and no value in excess of the value of its tangible property. On November 28, 1917, the capital stock committee made its final report, in which the full value of the capital stock and franchise of the appellee was fixed at $4,600,000 and the assessed value at one-third of that amount, ($1,533,335,) and $933,335, the equalized value of the tangible property, being deducted, the assessment of the capital stock, including franchise of the appellee, was fixed at $600,000. Rule 25 of the board provided that the final reports of the committees on the assessment of railroad property and capital stock of corporations should "lie over two days for the inspection of the members of the board." When these reports were made a motion was adopted that rule 25 be suspended for the purpose of considering the reports of the railroad and capital stock committees, and thereupon the reports were adopted. The evidence in the record furnishes no sufficient basis for determining the actual earning capacity of the appellee's bridge. Though no dividends had ever been paid and none of the stock had ever been sold, the value of the service rendered to the railroad companies which owned the stock and the

large amount of business handled may have been equivalent to the payment of substantial dividends. Upon what evidence the reports of the committees were based other than that offered by the appellee does not appear. It does not appear what investigation was made or what knowledge was possessed by the members of the board as to the property of the appellee and its value. They were not required to accept the valuation of the appellee. They had the right, and it was their duty, to ascertain and determine the value in such manner and by such means as were available, and it was not essential to the performance of this duty that they should hear evidence. They had a right to act upon their own knowledge and judgment and to use any available means of information. (*Sterling Gas Co.* v. *Higby,* 134 Ill. 557.) The ownership of the capital stock of the appellee and the manner in which its property was used by the beneficial owners were such that the fact that the stock had no market value, that no dividends were paid and that there were no earnings above interest, taxes and repairs, were by no means conclusive that the franchise of the corporation had not an actual, substantial value in excess of the value of its tangible property. The record does not show what was the net value of the service rendered by the bridge of the appellee to its owners if measured by the ordinary method of measuring the value of such service. In the absence of knowledge of such value it cannot be said that the value of the appellee's capital stock, including its franchise, did not exceed the value of its tangible property or that the value fixed by the State Board of Equalization was so excessive as necessarily to be fraudulent. We are bound to presume until the contrary is shown that the committee and the board acted upon sufficient information and that the facts were such as to justify the assessment.

The appellee contends that the suspension of the rules and the immediate adoption of the report of the committee

assessing the capital stock clearly demonstrate that the State
Board of Equalization did not exercise its judgment but
fixed the value of the stock arbitrarily at such an excessive
amount as was fraudulent. Rule 25 is not a rule made with
reference to the valuation of property but one made for the
convenience of the members of the board in the disposition
of its business. Another rule provided for the suspension
of the rules at any time upon a two-thirds vote of the mem-
bers present. The motion suspending rule 25 was voted for
by all the twenty-two members present, the board consist-
ing of twenty-six members, and the report was adopted by
the same vote. The railroad and capital stock committees
each consisted of seven members and the matter of the
appellee's assessment was heard at a joint meeting of the
committees. While there was no consideration of this re-
port or of the appellee's assessment after the report was
presented to the full board, the appellee had had an oppor-
tunity for a hearing and had presented its claims to the
committees, constituting a majority of the board. It is
to be presumed that the rules were suspended because the
members of the board had sufficient information themselves
and desired to take immediate action. The rule was for
their convenience and not to secure any right to the ap-
pellee, which had had its hearing. It was suspended in
accordance with the rules, and the action of the board in
immediately adopting the report cannot be regarded, for
that reason, as arbitrary.

The statute requires the State Board of Equalization to
fix the value of the capital stock, including franchise, of cor-
porations. The report of the capital stock committee fixed
the "full value of capital stock and franchise" at $4,600,-
000, the "assessed value of capital stock and franchise"
at $1,533,335, and the "net assessment of capital stock,
including franchise," after deducting tangible property, at
$600,000. The appellee insists that this shows that the
value of the franchise was added to the value of the capi-

tal stock, which includes all property, and thereby the value of the franchise was made to appear twice in the total. This argument is based entirely upon the use of the word "and" instead of "including," in the first two items just mentioned, and in our judgment is without force.

A tax on the capital stock of a corporation is a personal property tax. (*Parsons* v. *East St. Louis Gas Light and Coke Co.* 108 Ill. 380; *Belleville Nail Co.* v. *People,* 98 id. 399; *Cooper* v. *Corbin,* 105 id. 224.) Section 255 of the Revenue act provides that the tax on personal property can not be charged against real property except in case of removals or where the tax cannot be made out of personal property. One of these conditions must be shown before judgment can be rendered against the real estate. (*Schaeffer* v. *People,* 60 Ill. 179; *Mt. Carmel Light and Water Co.* v. *People,* 166 id. 199; *People* v. *Scheifley,* 252 id. 486.) Section 170 of the Revenue act provides that if any town or district collector shall be unable to collect any tax upon personal property charged in the tax book, by reason of the removal or insolvency of the person to whom said tax is charged or on account of any errors in the tax book, he shall, at the time of returning his book to the county collector, note in writing opposite the name of each person charged with such tax the cause of failure to collect the same, and shall make oath that the cause of delinquency or error noted is true and correct and that such sums remain due and unpaid and that he has used due diligence to collect the same, which affidavit shall be entered upon said collector's book and be signed by the town or district collector. The bill of exceptions contains no evidence of any attempt to comply with this section. The common law record contains a recital that a motion by the People was made and allowed for leave to correct the collector's return, and an affidavit, purporting to have been made by the town collector, stating that there is no personal property of the appellee in Venice township out of which the delinquent tax

can be collected. No amendment of the return was made, and no return, original or amended, was offered in evidence. There was no evidence of any notation in the town collector's book of the reason for failure to collect the capital stock tax.

Section 183 of the Revenue act provides that when it becomes necessary to charge the tax on personal property against real property the collector shall select some particular tract or lots of real property owned by the person owing such personal property tax, and in his advertisement for judgment and sale shall designate the particular tract or lots of real property against which such personal property tax is charged, and in the list filed for judgment the same facts shall be shown, and the court shall take cognizance thereof and give judgment against such tract or lots of real property for such personal property tax. There was no statement in the application for judgment or the advertisement that the collector would seek to charge any personal property tax on any real property, but the application was for a judgment and order of sale against land, town lots and personal property upon which the collector had been unable to collect the taxes, special assessments, interest and costs due and charged thereon. The facts shown in this record are insufficient to show that the assessment of capital stock was fraudulently made, but for the reason that the record will not sustain a judgment against the real estate for a personal property tax the objection to the capital stock tax was properly sustained.

The judgment will be reversed as to the tax of 1916 and affirmed as to the tax of 1917 and the cause will be remanded, with directions to overrule the objection to the 1916 tax.

*Reversed in part and remanded, with directions.*