THE PEOPLE ex rel. Ezra Heatherly, County Collector, Appellee, vs. MARY A. LEDFORD, Appellant.

*Opinion filed April 23, 1926—Rehearing denied June 2, 1926.*

1. TAXES—*fact that notes are deposited as collateral does not entitle owner to deduction of their amount as debts.* The fact that a property owner, in listing personal property for taxation, states that certain notes are deposited with a bank as collateral does not entitle her to a deduction of the amount of the notes as debts, and where neither she nor her agent, who appeared before the board of review in her behalf, made proper schedule or list of any debts owed by her, she cannot be heard to complain that she got no credits or deductions for debts.

2. SAME—*tax-payer must show right to deduction of debts from taxable property.* The right to have debts deducted from taxable property is not absolute but is a matter of favor to the tax-payer, and no one can claim such deduction without taking the steps required by law to secure it.

APPEAL from the County Court of Saline county; the Hon. A. G. ABNEY, Judge, presiding.

W. W. WHEATLEY, for appellant.

EDWARD J. BRUNDAGE, CHARLES H. THOMPSON, State's Attorney, and JACOB W. MYERS, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

At the June term, 1924, of the county court of Saline county the county collector applied for judgment against the real estate of Mary A. Ledford, appellant, for personal property taxes in the sum of $681.60 for the year 1923, which he was unable to collect from her personal property and had made a charge against her real estate. Mary A. Ledford filed objections to the rendition of judgment and order of sale. The court overruled her objections and entered judgment against her real estate, described as lot 1, block 3, Wilson & Feazel's addition to the city of Harris-

burg, Illinois, for her personal property taxes, and ordered the same sold. She has prosecuted this appeal from that judgment.

Med Ledford, the husband of appellant, listed her personal property with the assessor. The property as listed consisted of one horse, one cow, one automobile, one piano and household goods, which were assessed at one-half their value. The full value as determined by the assessor was $890 and the assessed value was $445. On the back of the schedule, under the heading "Remarks," the husband of appellant made this statement: "The difference between credits due us and the amount, which we owed April 1. On April 1, we held one mortgage note for ($650), one for ($300), one for ($1700), one for ($2000), one for ($4000), one for ($6200), totaling ($14,850). We had these notes up as collateral at First National Bank for ($14,850). I listed the balance as you will find on our schedule." The schedule of personal property aforesaid purports to be signed and sworn to by Mary A. Ledford under date of May 11, 1923. The oath refers to the remarks on back of the schedule with this statement, "that I have stated the full amount of my moneys and my credits (less deductions authorized by law,)" and the intent seems to have been not only to verify by oath the schedule of the personal property, but also the statement on the back of the schedule under the head of "Remarks." The assessor did not make any assessment on the $14,850, but simply made a total assessment on the $890 of personal property listed on the front page of the schedule.

On July 20, 1923, the board of review sent to appellant what it called a questionnaire, which contained twenty-three questions, and stated to her therein that if the questions were not satisfactorily answered by August 1, 1923, the appellant should appear before the board of review and show cause why her personal assessment should not be raised, and that if she did not appear the board would proceed to

assess her on the information they had. She was also re-
quested by that same communication to verify her answers
to the questionnaire by oath before a justice of the peace
or notary public. Appellant did not answer any of the ques-
tions but did sign the affidavit before a notary public, which
affidavit is in this language: "Mary A. Ledford, being
duly sworn on her oath, says that the answer to each and
every of the above and foregoing is true and correct," and,
as already stated, not a single one of the questions contained
any answer whatever by her. In lieu of the answers re-
quested she simply wrote on the back of the questionnaire
the following, which was directed to the board of review:

*"Gentlemen*—We listed with the assessor the difference between
credits due us and amounts which we owed April 1. On April 1
we held one mortgage note for ($650), one for ($300), one for
($1700), one for ($2000), one for ($4000), one for ($6200), total-
ing ($14,850). We had these notes up as collateral at First Na-
tional Bank for $14,850. The assessor listed us with the balance,
as you will find on our schedule."

The questions in the questionnaire are all very simple
and direct and very pertinent, the first six of which are the
following:

"1. How much money did you have subject to check in
bank or banks on April 1, 1923?—Ans.............

"2. How much money had you deposited in bank or
banks on April 1, 1923, for which you held certificates of
deposits?—Ans.............

"3. How much money not in bank did you have on hand
April 1, 1923?—Ans.............

"4. How much money did any other person or per-
sons, firm or corporation have belonging to you on April 1,
1923?—Ans.............

"5. Did you have any money in any other State belong-
ing to you on April 1, 1923?—Ans............. If so, how
much?—Ans.............

"6. Did you have any notes, mortgages or claim of any
kind in the hands or custody or control of any other per-

son, firm or corporation belonging to you on April 1, 1923, not contained in any other answer?—Ans.............. If so, how much?—Ans............

The questionnaire was returned to the board, and on August 1 appellant's husband, as her agent, appeared before the board and talked to one of the members thereof, the other two members being present but engaged in conversation with other persons. The conversation with the one member was in regard to a chattel mortgage which was shown to have been paid and released by the records in the recorder's office. Thereafter the board of review raised the assessed valuation of the appellant's personal property $7425, being one-half of the full value of the notes listed by her, and fixed the total assessed value of appellant's personal property at $7870, which included also the $445 assessed to her by the assessor. The increased assessment as made by the board was noted in the assessor's books as the assessed value of appellant's property as changed by the board, and no further explanation of the increase of the assessed valuation is disclosed by the records of the board. The evidence, however, shows clearly that the board of review simply increased her assessment by assessing the notes and mortgages scheduled as aforesaid by appellant in her schedule of personal property, and based this assessment solely on the information she had given the assessor and the board by her said schedule. Appellant was taxed on her assessment, increased as aforesaid, the sum of $722.46. She paid the sum of $40.86, or the amount her taxes would have been on the assessed valuation of her property as fixed by the assessor, and refused to pay the balance of $681.60, or the amount based upon the assessed valuation as increased by the board.

The People, over the objections of the appellant, introduced evidence showing that the appellant had not borrowed the sum of $14,850 but had borrowed $13,500, which was represented by two notes for $5000 and $8500, respectively,

making a difference of $1350 between the notes that she owned and the amount that she had borrowed, although she had, as a matter of fact, put up notes aggregating $14,850 as collateral for the two notes aggregating $13,500 that she owed the bank. The evidence so presented. over appellant's objections also discloses that on March 22, 1923, the date on which appellant had borrowed the $8500 from the bank, she had on deposit a sum of $27,881.63. At the close of business on March 24 she had on deposit $27,872.15, and on March 27, $27,792.53. On March 29 she checked out $27,800, which left her account overdrawn $7.47. On March 31 she deposited $130.17, leaving in her account $122.70. On April 3 she checked out $50, leaving in her account $72.70. On April 6 she deposited $27,800 and paid off her two notes at the bank, leaving in her account $14,275.20; and on April 7 she deposited $201.20, which deposit was entered as interest, and which left her account at close of business on that day $14,476.40, with all of her aforesaid indebtedness to the bank fully paid.

The first contention made by appellant is that the board of review did not proceed as required by law in increasing the assessed valuation of appellant's property, and that the board had no power to enter the assessment in a lump sum because it was an original assessment, and that in such case the board of review is required to proceed as an assessor would, by listing, classifying and valuing the property and setting down in a column opposite the proper items the assessed value thereof, and that the board.has no power to assess a lump sum as the value of all the property of a taxpayer. This is a misapprehension as to what the board actually did in this case. The board did not make a new assessment or an assessment of newly discovered property, but simply raised her assessment to the proper amount by assessing her notes and mortgages already listed in her schedule as. aforesaid and which the assessor should have made in the first instance, as she made no showing what-

ever at any time that she was entitled to any credits or deductions on the assessed value of her notes and mortgages. Under sections 6, 24 and 25 of the Revenue act the appellant was required to list in her schedule of property delivered to the assessor the notes that she owned, which are referred to as credits. To be allowed deductions from those credits the appellant was required by sections 27, 28 and 29 of the Revenue act to file a statement of the deductions, if any, with the assessor that she was entitled to under the law. (*Peirce* v. *Carlock,* 224 Ill. 608.) The listing of her notes on the back of her schedule was a substantial compliance with the act in that regard, and the only thing that was left to be done by the assessor was to fix the assessed valuation of the notes and mortgages. This the assessor failed to do, but the board of review simply did what the assessor ought to have done, and did it by raising the assessment to its proper amount, as already stated, which act of the board was simply a re-valuation or a correction of the assessed value of her property according to her return to the assessor and according to her information to the board of review when she made answer and returned the questionnaire.

Appellant cannot be heard to complain that she got no credits or deductions for the two debts that she owed, and for the reason that her husband and authorized agent had made no proper schedule or list of any debts owed by her. The statement in her schedule that her notes were up as collateral at the First National Bank for $14,850 was not equivalent, in any sense, to a listing of debts owed by her to the bank or to anyone. It is clear from an examination of the schedule and the assessment books of the board of review that the valuation of appellant's property was obtained by adding the amounts listed in the schedule filed by her and that the assessed value was determined as one-half of that amount, and her assessment was increased by adding one-half of the value of her notes to the assessed

value, as the assessor should have done in the first instance, and that board simply assessed property in her schedule named and valued that was not assessed by the assessor. The only record the board of review was required to keep of its actions in determining that the notes should be assessed against appellant was to note what it did on the tax books,—that is, note the assessment of the board of the property in her schedule not assessed. This it did and there is no cause of complaint against it. (*People* v. *Hunt,* 311 Ill. 291.) The fact that the notes were collateraled with the bank does not show that that amount of money was owed to the bank by appellant, and the evidence did not show, as a matter of fact, that she owed the bank as much as the face value of her notes. The law is well settled that the right to have debts deducted from taxable property is not absolute but is a matter of favor to the tax-payer, and no one can claim this deduction without taking the steps required by law to secure such deduction. *Siegfried* v. *Raymond,* 190 Ill. 424.

Appellant contends that she did not have a hearing before the board of review. She was given the privilege of a hearing by simply answering the questions in the questionnaire directly and correctly under oath. She declined to do that, and could have thus had a complete hearing without being troubled by having to appear either by herself or agent. She appeared by agent before the board and had the privilege there of a complete hearing. No hearing was asked of the board. One of the members satisfied himself as to a certain mortgage he had in mind. He made no suggestion to the agent that that was all that was required, and he went away without making further inquiries or further explanations or answers. She has no just complaint that she did not have a hearing. Besides, the final hearing in this case clearly shows,—at least the board was warranted in finding,—that neither her agent nor herself had

given the board the full and true facts as to her property. The showing is that appellant was properly assessable with the full amount of her assessment as finally made by the board of review. If this is not true, it was incumbent upon her to show that she was not assessable with that amount on final hearing, and this she did not do or attempt to do. The showing is, that after paying all of her debts aforesaid she had on the 7th day of April on deposit in the bank $14,476.40. She could not have had far from that sum on April 1, and if she had as much on the first of April she would have properly been assessed with $7288.20, which is $136.80 less than the amount that she was assessed on her notes.

The judgment of the county court is affirmed.

*Judgment affirmed.*