(Nos. 23946, 23947.—

THE PEKIN LOAN COMPANY, Appellee, *vs.* T. E. SOLTERMANN *et al.* Appellants.—THE PEKIN FINANCE COMPANY, Appellee, *vs.* T. E. SOLTERMANN *et al.* Appellants.

*Opinion filed February 18, 1937.*

WILLIAM A. POTTS, and ROBERT H. ALLISON, for appellants.

RALPH DEMPSEY, C. I. MARTIN, and PATRICK A. D'ARCY, for appellees.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

These two appeals present the same issue. The causes have here been consolidated for hearing. Each plaintiff is a Delaware corporation licensed to do business in this State. Each filed its complaint in the circuit court of Tazewell county to restrain the county clerk from extending a tax upon the increased amount of its personal property for the year 1935 made by the board of review and to enjoin the county collector from collecting such tax. A temporary injunction was obtained. The defendants answered. Each cause was referred to the master in chancery, who took the evidence and found for the plaintiff. The trial court sustained the master, entered a decree in each case granting

the relief prayed and made the temporary injunction permanent. The defendants have appealed.

The Pekin Loan Company is engaged in the loan business under the provisions of the Small Loans act. (State Bar Stat. 1935, chap. 74, secs. 1-28, pp. 1942-47.) The Pekin Finance Company is engaged in the financing of commercial paper for dealers in automobiles making sales on credit. Each plaintiff has its principal office at Pekin. O. D. Eaton is president and U. J. Albertsen is the manager of each company. After April 30 and prior to July 1, 1935, Albertsen delivered to the assessor for the town of Pekin the personal property tax return for each corporation. Each schedule was made on the regular form prepared by the State Tax Commission and had been theretofore delivered by the town assessor to the several plaintiffs for the purpose of procuring the tax returns of the two companies. The return had been made for each company in the same manner and on a like form for two or three years preceding 1935. The controversy arises upon the credits of each company assessed for taxation.

The loan company returned net credits of $5288. This amount was reached by listing on the form, under the heading "Computation of net credits," as credits, notes receivable, $40,246; accounts receivable, $42; total credits, $40,288; as deductions, notes payable, $35,000. There then followed a recapitulation, in which the amount of deductions was subtracted from the amount of credits, leaving a total of net credits of $5288. Under the title "Indebtedness as of March 31, 1935," the deductions claimed were stated to be "$35,000 money borrowed on 90-day notes."

The finance company listed net credits of $1106. Under the heading "Computation of net credits," it set forth as credits, notes receivable, $132,570; accounts receivable, $2023; total credits, $134,593; as deductions, notes payable, $132,170; accounts payable, $1317; total deductions, $133,487. The deduction of notes payable was explained

and itemized in the appropriate place as "money borrowed—
90-day notes, several six months but none over one year
due to banks." The item "accounts payable," of $1317,
was detailed as "current obligations payable within 30 days."
Each schedule was subscribed and sworn to by O. D. Eaton
as president of the plaintiffs. He signed the oath printed
on the form set forth in said schedule, with the exception
that the words "in accordance with the usages and customs
of the State of Ill." were added to and made a part of the
oath. The schedules were delivered to the assessor, who re-
turned them to the county treasurer. Thereafter the plain-
tiffs were notified by the board of review of a hearing to
increase their respective assessments. Albertsen, in re-
sponse to the notice, appeared before the board and objected
to any increase. The board took the matter under advise-
ment. On September 2 it entered an order finding that
the respective schedules did "not comply with sections 27
and 29 of the Revenue act." The board ordered its clerk
to strike off of the assessment of the loan company the
item "net credits $5288," and to substitute in lieu thereof,
under the heading of "Mortgages and notes," the sum of
$20,120. This amount represented approximately fifty per
cent of the $40,246 listed as notes receivable. The debas-
ing factor adopted by the board was fifty per cent. The
valuation placed by the loan company on the other items
in its schedule of personal property was not disturbed. On
September 5, Albertsen, with his attorney, appeared before
the board and requested a further hearing. The hearing
was granted. The item listed for taxation purposes by the
board under the heading "Mortgages and notes," $20,120,
was reduced to $16,910 and ordered extended as provided
by law. On September 2 the board struck from the return
of the finance company the item of net credits, $1106, and
ordered substituted therefor, under the heading of "Mort-
gages and notes," the sum of $66,300, which represented
the full amount of notes scheduled, debased at approxi-

mately fifty per cent. The board granted a further hearing at the request of Albertsen. Thereafter the board decreased the amount of the assessment of mortgages and notes to $51,230. That amount was duly entered for taxation purposes. The item "deductions," of $35,000, in the loan company's schedule, and the item of "deductions," of $133,487, in the finance company's schedule, were each stricken by the order of the board.

On the hearings before the board no evidence was presented to the effect that the respective schedules delivered to the tax assessor were in any manner incomplete, inaccurate or failed to set forth all the personal property owned by the respective plaintiffs as of April 1, 1935. The record shows that to substantiate the deductions claimed on the hearing before the board, the plaintiffs' manager offered, if the board desired, to furnish it an itemized list of all the obligations, to whom they were payable, and to give the board authority to interrogate any of the parties named as creditors. On the hearing before the master no evidence was introduced showing or tending to show that either plaintiff failed or refused to list on its schedule any property held by it as of April 1, 1935, or that the schedule was irregular in any manner other than the change in the oath accompanying each schedule, made by the addition of the words hereinabove set forth.

The board of review did not question the accuracy of the schedules as to any personal property listed for taxation. It accepted as correct the amount of bills and accounts receivable scheduled by the plaintiffs as credits and by the application of the debasing factor determined the amount of credits for taxation purposes. It ignored, without any evidence, the item of deductions claimed against credits. It is not the function of the board of review to cause to be listed for taxation purposes property which is not subject to tax. True, where the owner wilfully has failed to present a correct schedule of his personal prop-

erty, and thereby sought to avoid payment of his just tax, it is within the sphere of the board to require such property to be scheduled for assessment and penalty imposed for the attempted evasion. The board, in the process of revising the assessment, is not justified in depriving the property owner of the benefit of deductions against his credits permitted by the statute, simply because of his failure to make a proper return or no return at all. *People* v. *Meacham,* 241 Ill. 415.

Section 27 of the Revenue act (State Bar Stat. 1935, chap. 120, pp. 2613-14,) so far as applicable here, provides: "In making up the amount of credits which any person is required to list for himself, or for any other person, company or corporation, he shall be entitled to deduct from the gross amount of credits the amount of all *bona fide* debts owing * * * to any other person, company or corporation, for a consideration received," etc. Section 29, so far as pertinent here, is: "In all cases where deductions are claimed from credits, the assessor shall require that such deductions be verified by the oath of the person, officer or agent claiming the same. * * * The assessor shall preserve the statement of deductions thus claimed, so verified by affidavit, and when he returns the assessment books shall file the same with the county clerk, to be kept on file in his office for two years," etc.

The defendants correctly state the law to be that the right to deduct debts from taxable property is not unconditional. In order to avail himself of the favor the property owner must comply with the statutory provisions. From this premise the defendants argue that under section 29 the deductions shall be particularized on a writing separate from the schedule of the other property. They cite in support of their position the cases of *People* v. *Ledford,* 321 Ill. 247, *Peirce* v. *Carlock,* 224 id. 608, *Siegfried* v. *Raymond,* 190 id. 424, *Sellars* v. *Barrett,* 185 id. 466, and *Morris* v. *Jones,* 150 id. 542. None of those cases control the situa-

tion here. In the cases cited there was no written schedule of the deductions claimed. In *People* v. *Ledford* the taxpayer listed no credits but on the back of the schedule endorsed a statement to the effect that she owned $14,850 of credits in mortgage notes, that the notes were pledged as collateral to the First National Bank, and that she had no taxable credits. The board of review sent her a questionnaire inquiring of her what money she had as of April 1. The questionnaire was returned unanswered, with a letter stating substantially the same matters relative to her notes and mortgages and the pledge thereof to the bank as she had written upon the tax schedule. The board raised the assessed valuation of her personal property $7425, being one-half of the full value of the notes listed by her. The evidence showed that the aggregate of her indebtedness to the bank was $13,500; that she had money on hand as of April 1 of approximately $27,800 which had not been returned for taxation. She never made any showing or attempt, other than as above related, to establish her claim that she was entitled to deductions from her notes and mortgages. In the other four cases the board assessed the tax-payer for omitted credits.

Counsel rely upon the language found in *Peirce* v. *Carlock,* to the effect that for the property owner to avail himself of the benefit of deductions from his credits he must make out a statement of his credits and the deductions claimed, on a document separate and distinct from the regular tax schedule. That expression was unnecessary to the decision of that case. No issue was there before the court as to whether the statement of credits and deductions should be on a separate instrument.

Subsequent to the decision in the *Carlock case, supra,* by an act of the legislature in force July 1, 1919, the State Tax Commission is required to approve the form of blanks for taxation schedules or returns authorized or required by any provisions of law relating to the assessment of prop-

erty. (State Bar Stat. 1935, chap. 120, par. 107, sub-sec. 4, p. 2623.) Under the power committed to it the tax commission has seen fit to prescribe a form of schedule which provides for the listing of credits and setting forth the deductions claimed, along with the personal property subject to assessment, all in the one document. Such form was used in this case. A return of credits and deductions made on one instrument, where it was on the form prescribed by the Auditor of Public Accounts of Illinois, was held sufficient by this court in *People* v. *Illinois Central Railroad Co.* 273 Ill. 220, 252, and the deductions there claimed from the credits were allowed.

The oath on the schedules at bar covered the entire contents of the schedule. It was not in the form prescribed by the tax commission by reason of the insertion therein of the sentence above quoted. The board apparently waived the oath or treated the attempted modification thereof as surplusage. Its record does not show that the attention of the plaintiffs' manager or attorney was called to the alleged defective oath or any request or opportunity given to amend it. The objector within apt time offered to prove the claimed deductions. Our conclusion is that in making the claim for deductions there was a substantial compliance by each plaintiff with the statute.

The defendants attack the decrees upon the proposition that the deductions here in issue were claimed as against credits consisting of notes for "money loaned;" that as against such credits no deductions are permitted. As warranting this position, defendants rely on section 28 of the Revenue act. That section is: "No person, company or corporation shall be entitled to any deduction from the amount of any bonds, stocks, or money loaned, or on account of any bond, note or obligation of any kind, given to any insurance company on account of premiums or policies, nor on account of any unpaid subscription to any religious, literary, scientific or charitable institution or so-

ciety, nor on account of any subscription to or installment payable on the capital stock of any company, whether incorporated or unincorporated." It is quite obvious that this section is ambiguous and its meaning doubtful. In that situation it is a rule of construction that the interpretation is to be in favor of the tax-payer and against the State. *Fidelity Co.* v. *Board of Review,* 264 Ill. 11; *People* v. *Griffith,* 245 id. 532.

The plaintiffs claim that if the view of the defendants is adopted as prohibiting deductions from credits which are represented by notes for money loaned, but as allowing deductions from notes given for services rendered, property purchased, and like debts owing by the debtor to the creditor, section 28 violates the mandate of equality and uniformity declared by section 1 of article 9 of our State constitution. We do not deem it necessary to decide that issue. We prefer to base our decision upon a construction of the section. Section 28 was enacted in 1872. (Laws of 1871-72, p. 1.) Section 24 of the Revenue act was adopted in the same year. It was amended in 1879 *inter alia* by inserting therein the following sentence: "and in assessing notes, accounts, bonds and moneys, the assessor shall be governed by the same rules of uniformity that he adopts as to value in assessing other personal property," etc. (Laws of 1879, p. 252.) The application of the rule of uniformity to the assessment of notes is not in harmony with the provisions of section 28 that no deductions are granted where the notes are given for "money loaned." Section 27 by express language permits the property owner to deduct from the gross amount of credits the amount of all *bona fide* debts owing for a consideration received, believed to have been adequate when received. It was evidently the legislative intent to repeal so much of section 28 as purported to forbid deductions from credits for money loaned. Two legislative acts upon the same subject which conflict one with the other cannot stand. Where one is

later in point of time it repeals the earlier act by implication. (*People* v. *Illinois Central Railroad Co.* 295 Ill. 408; *People* v. *Fisher,* 274 id. 116.) Deductions may be made from credits for money loaned.

Lastly, the defendants make the point that the complaints will not lie in the present cases—that if the plaintiffs have a remedy it is at law. Notes and accounts are credits and credits are property. Equity will take jurisdiction to restrain the collection of a tax assessed against property which the tax-payer did not own at the time of the levy of the assessment or where the property is assessed at an amount grossly in excess of its true value. *Bates* v. *Parker,* 227 Ill. 120; *New Haven Clock Co.* v. *Kochersperger,* 175 id. 383; *Wabash, St. Louis and Pacific Railway Co.* v. *Johnson,* 108 id. 11; *Allwood* v. *Cowen,* 111 id. 481; *Sellars* v. *Barrett, supra.*

There is no evidence in the case to support the charge that the board of review, in levying the assessment, committed a fraud upon the plaintiffs maliciously, intentionally and knowingly. However, the assessment of the credits of the plaintiffs by reason of the refusal to allow the deductions was so greatly in excess of the value of plaintiffs' credits as to amount to constructive fraud. (*People* v. *Wiggins Ferry Co.* 357 Ill. 173.) The action of the board of review in increasing the amount of the credits of each plaintiff and in refusing to accord to it the deductions to the extent of its indebtedness as scheduled amounted to the levy of an assessment upon property which it did not own, and the levy was without authority of law. Equity had jurisdiction of the two proceedings.

We find no reversible error in the record, and the respective decrees rendered by the circuit court of Tazewell county are affirmed.

*Decrees affirmed.*