(No. 20590.—

THE PEOPLE *ex rel.* J. Ward Smith, County Collector, Appellee, *vs.* THE NATIONAL PLATE GLASS COMPANY, Appellant.

*Opinion filed April 23, 1931—Rehearing denied June 4, 1931.*

WM. JAFFE, and RICHOLSON, ARMSTRONG & O'MEARA, (JOHN H. ARMSTRONG, of counsel,) for appellant.

RUSSELL O. HANSON, State's Attorney, (CHESTER E. JACOBSON, and LESTER J. HORAN, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The county treasurer and *ex-officio* county collector of LaSalle county, Illinois, made application to the county court at its June term, 1930, for judgment and order of sale against the real property of the National Plate Glass Company, a corporation, for delinquent real estate and personal property taxes for the year 1929, amounting to approximately $29,000. Many objections to the application were filed in the county court by the company. It paid part of its taxes prior to the hearing upon the objections thereto, leaving a balance of $18,004.18 assessed for real estate tax and $1500.17 for personal tax. The county court abated the real estate tax in amount of $3604 on account of an error caused by the inadvertence of the county clerk

in extending the taxes against the company's property, over-ruled the remaining objections, entered judgment against the property for delinquent taxes in amount of $15,900.35, and ordered that the property be sold to satisfy the judgment. Motions for a new trial and in arrest of judgment were overruled. The company deposited the amount of delinquent taxes with the county treasurer and perfected an appeal to this court to review the judgment.

The contentions of appellant are, in substance, (1) that the tax is void because the county clerk did not place in separate columns of the collector's book the respective amounts of State, county, town, city or village, road and bridge and school tax but extended the total amount of the taxes for all purposes in the column, "Total amount of tax;" (2) that appellant was doubly assessed on certain manufacturer's tools, implements and machinery, and that the court refused to admit evidence offered by appellant to show such double taxation; (3) that appellant's property was not assessed in uniformity with the property of other corporations in LaSalle county, and the court refused to admit evidence offered by appellant for the purpose of showing that fact; (4) that the evidence showed the board of review of LaSalle county assessed appellant on the book value of its property, and that if other corporations in the county were not likewise assessed then the assessment against appellant's property was void because made by a different method and upon a different principle.

For an understanding of the case it will be necessary to state the material facts disclosed by the record.

Appellant is a subsidiary of the General Motors corporation and engaged in the manufacture of plate glass at Ottawa, Illinois. Its industrial plant there consisted of three divisions or units and about one hundred dwelling houses, all of which were located upon a 207-acre tract of land. The last quadrennial assessment of this property was made by the local assessor in 1927. The board of review appar-

ently made some effort that year to place a fair valuation upon the properties of all corporations within the county and sent out notices asking that each corporation bring in its books in order that the board might place a fair valuation upon their respective properties. No books were brought in by any of the corporations but figures were presented by several of the companies. The board of review endeavored to use a rule or plan of taking one-third of the full value of property as a fair cash value for assessment purposes. The figures presented by appellant's agents were not accepted by the board of review, and after some investigation by the board it materially increased appellant's personal property and real estate assessments, making the total assessment in excess of $3,000,000. Appellant paid part of its taxes extended on that assessment and refused to pay the balance. Upon application for judgment and sale for delinquent taxes for 1927 in amount of $24,562 a trial was had and judgment and order of sale were entered by the county court. An appeal was prosecuted to this court and the judgment reversed. The increase made by the board of review was declared to be invalid because it was a lump sum assessment. (*People* v. *National Plate Glass Co.* 332 Ill. 599.) The opinion in that case was filed December 20, 1928. Appellant's agent filed a personal property schedule for 1928, which was materially increased by the assessor, and its total real and personal property assessment for 1928 was $3,178,170. Appellant filed a complaint with the board of review as to its 1928 real and personal property assessment, and through its attorney on December 6, 1928, secured a reduction thereon of approximately $1,000,000. Two months later the board of review reconsidered the real estate assessment and increased it $71,830, thereby making appellant's personal property assessment the sum of $748,740 and its real property assessment $1,501,260, or a total of $2,250,000. Appellant paid part of the taxes based on this assessment and ob-

jected to the balance, which was returned delinquent. When application for judgment and order of sale for delinquent taxes for 1928 was made by the county collector in the county court, it appears from the statement of counsel for appellant and the testimony of one of the members of the board of review that a compromise was reached between the parties, an abatement of $78,000 was made in the assessment and the delinquent taxes for 1928 were paid. In 1929 F. R. Millerschin, the assistant secretary and treasurer of the glass company, filed its personal property schedule with the local assessor. This schedule was in amount of $634,740 and was $11,000 to $15,000 less than its personal property schedule filed in 1928 and 1927. The local assessor accepted the company's schedule and the personal property taxes for 1929 were extended on that basis. The real property assessment of $1,501,260 remained as it was for the previous year. Appellant filed a complaint on September 7, 1929, with the board of review relative to this assessment, wherein it fixed the value of its real estate at $1,014,715 and its personal property at $634,740, which latter amount was the same as that shown in its 1929 schedule and as accepted by the assessor. Several conferences were had by members of the board of review, appellant's attorney and Millerschin, one of appellant's officers. These conferences and hearings resulted in a reduction of $136,000 in appellant's real estate assessment, and there being no change made in the assessment of its personal property the total 1929 assessment was $2,000,000. Appellant paid a portion of the tax extended thereon for 1929 and refused to pay the balance. Thereafter judgment and order of sale for 1929 delinquent taxes were entered against appellant's property by the county court as previously stated.

It is first contended by appellant that the tax is invalid because the county clerk extended the taxes against appellant's property in one column as a total sum instead of placing the amount of each different kind of tax in a sepa-

rate column. Section 125 of the Revenue act, (Smith's Stat. 1929, p. 2383,) as well as other provisions found in the City and Village act and the School act, makes it the duty of the county clerk to make out for the use of the tax collector, in books to be furnished by the county, correct lists of taxable property as assessed and equalized, and such books shall contain proper columns for the extension of the several kinds of taxes. The statutory provisions contemplate that the county clerk, except in counties over 500,000 inhabitants, shall extend the respective kinds of taxes in separate columns to be provided therefor in the collector's book. The county clerk has no power to levy taxes nor to determine whether taxes have been legally assessed. His duties in the extension of taxes are purely ministerial in character. (*People* v. *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* 316 Ill. 410.) It was urged in *Thatcher* v. *People,* 79 Ill. 597, that the law was violated by the county clerk having failed to extend the road tax in a separate column in the collector's book. This court there said: "Whilst the law directs this to be done it does not declare that a failure to do so shall render the tax invalid, nor does justice or public policy require that such an effect should be given to this statute. A failure to extend the town taxes in separate columns does not at all affect the substantial justice of the tax. It may involve the necessity of making a simple calculation to determine the proportion of the tax which shall be paid to different town officers in case the entire amount should not be collected. The carelessness, or even the willfulness, of the clerk in not observing this provision cannot be held to defeat the collection of the tax." We think the decision of the court in that case applicable to the facts presented here, and the failure of the county clerk to fully perform his ministerial function did not vitiate the tax.

We shall next dispose of the item or the balance due for the 1929 personal property tax. Appellant's officer made

its personal property schedule for 1929 and filled in the columns on the schedule form intended and provided for the use of the assessor. This schedule was accepted by the assessor and used as a basis for the extension of such taxes. Appellant's complaint filed with the board of review on September 7, 1929, to the 1929 assessment of its property, fixed the value of its personal property at the same figure appearing in its schedule filed for that year. In *People* v. *Illinois Central Railroad Co.* 273 Ill. 220, it was said: "The authorities in this State, as well as the weight of authorities in other States, are to the effect that a tax-payer is bound by his own statements as to the nature, title and value of the property made in the list which he returns for taxation. 'In the absence of any evidence of fraud, accident or mistake a property owner is bound by a schedule of his taxable personalty given by him to the assessor.' " In *People* v. *Atkinson,* 103 Ill. 45, this court said: "We think it a safe rule to hold that where a person makes out and delivers to the assessor a schedule of the amounts, quantity and quality of all personal property in his possession required to be listed for taxation by him * * * he should be bound by such a return." The record in the instant case presents no legal reason why the personal tax should not have been paid.

It will be observed that the 1927 assessment of appellant's property as raised by the board of review for that year was declared invalid by this court because such increase was made in a lump sum; that the 1928 assessment was materially reduced by the board of review, and later an additional reduction was made, resulting in the payment by appellant of its 1928 delinquent taxes, and that upon complaint filed with the board by appellant in 1929 its real estate assessment for that year was again lowered. One of the members of the board of review in 1928 and 1929 testified that the attorney for appellant agreed to settle the case taken to the Supreme Court involving appellant's 1927

taxes if its assessment for 1928 were reduced in the neighborhood of $1,000,000; that the assessment for 1928 was reduced over $928,000, making the assessment $2,250,000, and that this sum was not the full cash value of appellant's property, which the witness estimated to be over $8,000,000. He testified appellant's agent, Millerschin, came before the board of review relative to the 1929 assessment and read a lot of figures which he said were obtained from Dun and Bradstreet reports; that he also had a statement which he stated was taken from the books of the glass company, and he compared the figures on that statement with the values of certain other corporations as shown by their reports to Dun and Bradstreet and then said his company was paying more than the others. The witness said he gave consideration to the evidence which Millerschin presented, and that the board of review made a reduction in appellant's assessment but the witness was of opinion it should have remained as it was. Another member of the board of review during 1929 testified that during that year Millerschin and Rippey appeared before the board and they had a general discussion about the assessment of the glass company; that when Millerschin came the second time he had a balance sheet with some figures thereon which he claimed showed the book value of appellant's plant as taken from the books of the corporation, and which were, as witness remembered, between $8,000,000 and $9,000,000; he also had with him some figures which were copies of Dun and Bradstreet reports as to the value of the assets of various other corporations in LaSalle county; that Millerschin stated that according to the figures from his balance sheet and the Dun and Bradstreet reports of other corporations appellant's property was assessed at thirty per cent of its book value while other corporations were assessed at twelve to twenty-seven per cent; that witness said to Millerschin, "I understand you people have been in here every year. Why is it you cannot arrive at some definite figure?" and Millerschin re-

plied, "There is no reason why General Motors should be paying thirty per cent and other people paying six, eight or twelve per cent;" that the board made a reduction on the real estate assessment based upon the evidence and documents presented to the board by Millerschin, but it did not go into the personal property assessment because appellant's complaint did not ask any reduction on personal property. The witness stated the glass company was the only corporation appearing before the board that year with figures supposedly showing the valuation of its plant, and the company apparently was seeking a re-valuation of its properties; that Millerschin did not submit Dun and Bradstreet reports showing appellant's report to either commercial-rating concern as to its own assets; that real estate in La-Salle county, except that owned by corporations, is on the assessor's books at about one-third of its value; that the glass company was given the opportunity of presenting all the facts, statements and arguments to sustain its complaint filed with the board of review but the company did not furnish all the information it promised to present. Another member of the board of review in 1928 and 1929 testified he based his reduction of the 1928 assessment of appellant's property upon the judgment of a former member of the board who had examined the plant; that there was some conversation with appellant's attorney that if the 1928 assessment were reduced the glass company would pay its controverted tax of 1927; that its attorney and Millerschin appeared before the board at various times during 1929, and they had figures which they said represented the book value of its property, which amounted to something over $8,000,000, but they did not leave the figures or statement with the board; that Millerschin also had figures which he stated were given by other local corporations to Dun and Bradstreet but he had no figures showing the report of the appellant to these commercial agencies; that Millerschin attempted to draw a comparison between the glass com-

pany's assessment for taxes and other LaSalle county corporations, using his alleged statement of book values of his own company and the commercial-rating agency reports of other corporations. The witness further testified that the personal property assessment of appellant was not objected to, and that the record of the board of review in reducing appellant's total assessment to $2,000,000 was made on the company's filed complaint for reduction; that the board gets what it considers the full cash value of real estate and then tries to use a third of that for assessment purposes; that when corporations or individuals file complaints with the board of review its members take into consideration the best information they can get and try to be fair in their assessments, and that there was not a corporation in the county actually assessed upon one-third of its book value. The witness also stated that he did not understand any of appellant's representatives at any of the hearings in 1929 to contend that appellant was being assessed twice on the same property, and that its attorney talked with the witness and wanted the board to fix the total valuation of the 207-acre tract at $1,800,000.

F. R. Millerschin testified at length upon the hearing and stated in substance that as an officer of the glass company he prepared the personal property schedules of 1927, 1928 and 1929 and appeared before the board of review relative to the complaints of his company's total assessment for taxation purposes on several occasions. He stated that the board was always asking for and insisting upon having the book values of the company; that the figures he furnished in 1927 were not book values, and in 1929 he told the board he did not feel his company should be asked for its books because he did not believe anybody else furnished them. The witness stated that he finally had a transcript made up showing the book values of the appellant's plant, equipment, machinery and inventory of materials as of March 1, 1929, and had this with him before the board of

review at the final hearing in October, 1929; that the statement was true and correct and was a little in excess of $6,800,000, and he so told the board of review; that at that time he also had with him copies of reports or statements given to Dun and Bradstreet by other corporations in the county, and he told the board that the glass company was paying thirty per cent of its book value whereas with other corporations the percentage of the value used for taxing purposes as against the values disclosed on the statements furnished to Dun and Bradstreet were from three to twelve or fifteen per cent. None of these statements or reports were left with the board of review. He also informed the board that one of the company's units was being dismantled and some of the machinery had been shipped away; that one warehouse had burned, and that a new plant was in the process of construction. He further testified that the fair cash value of all the personal property and all of the real estate embraced in the 207-acre tract, and the improvements thereon on April 1, 1929, was not in excess of $4,000,000.

Appellant complains because the county court refused to hear evidence tending to show that appellant had been doubly assessed upon some of its personal property. From the evidence presented by at least one of the members of the board of review it would appear that there was no contention of double assessment raised before the 1929 board. The personal property assessment as shown by the schedule prepared by appellant's officer was accepted by the assessor in 1929 and the tax extended in accordance therewith. The proper forum for the presentation of every phase of a complaint with reference to general assessments for taxes is the board of review. It is the duty of that body, under the laws applicable thereto, to make such adjustment of taxes as will relieve the tax-payer or his property from any unfairness, inequality, mistake or inadvertence. The county court ruled that it was not the function of that court at a

hearing upon a delinquent tax application to permit the taking of an inventory for tax purposes of a large industrial plant such as appellant's is in the instant case, and we agree with that conclusion under the circumstances presented by this record.

The other contentions of appellant are based upon the court's refusal to receive testimony and documentary evidence tending to show that there was great inequality and a lack of uniformity in the taxation of appellant's property as compared with other corporations in LaSalle county, and that the same method of arriving at a value or assessment of corporate properties for taxation purposes was not used by the board of review. It seems unnecessary for us to set forth in detail the names of the various companies and the figures offered showing their respective alleged book valuations, the value of their assets as disclosed by their respective annual reports to the Secretary of State, and the assessed value of their properties. We have examined this proof, and, conceding that it was competent evidence for the purpose offered, we find no marked discrimination as against the interests of appellant. In fact, this record convinces us that if the testimony of the members of the 1929 board of review is to be believed—and their reputations for truth and veracity have not been questioned—the majority of that body at least have endeavored to give to appellant a reasonable and fair assessment of its property. The 1929 assessment was $2,000,000. One of the members of the board of review testified that appellant's attorney wanted the board to make the total assessed valuation $1,800,000. A difference of $200,000, or even a much larger sum when considering property having a value of somewhere between $6,800,000 (which was the sum Millerschin testified he gave to the board of review to be the book value of appellant's property) and $11,259,000 (the value of appellant's assets as shown by its sworn annual report for 1929 filed with the Secretary of State) would not be sufficient as a basis to es-

tablish fraud, gross unfairness or arbitrary action on the part of any taxing officer or body.

In *People* v. *Bourne*, 242 Ill. 61, this court said: "The tax-payer and the public are alike entitled to the honest judgment of the officers who make and review assessments, and if such officers are actuated by wrongful or malicious motives, resulting in a fraudulent over-valuation, the court will interpose to protect the tax-payer, but unless the valuation is fraudulently made it cannot be reviewed by the court on application for judgment against the property. If property has been assessed higher than it should have been, through a mere error of judgment on the part of the officers making the valuation, the courts are powerless to rectify the error and can only relieve against fraud. (*Keokuk and Hamilton Bridge Co.* v. *People*, 145 Ill. 596.) The fact of over-valuation will not, of itself, establish fraud. (*Spring Valley Coal Co.* v. *People*, 157 Ill. 543; *Burton Stock Car Co.* v. *Traeger*, 187 id. 9.) The circumstances under which a valuation was made may be considered in connection with the amount, and may be sufficient to show that the valuation was not the result of the honest judgment of the assessing officer. In *State Board of Equalization* v. *People*, 191 Ill. 528, the attending circumstances were considered and were found sufficient to justify the conclusion that fraud in making the assessments had been established; but in this case the plaintiff in error presented to the court nothing except an offer to prove that the valuation was greater than the actual value of the property, which was not sufficient to establish fraud."

In *People* v. *Millard*, 307 Ill. 556, this court also said: "The constitution provides that the ascertainment of the value of property for the purpose of taxing shall be vested in such persons as are determined by the legislature and prohibits the fixing of such values by any other person. Courts have no power to fix the value of property for taxation. Such valuation is not open to supervision of the ju-

dicial department of the State unless it is so excessive as to amount to fraud. (*Oak Ridge Cemetery* v. *Tax Com.* 299 Ill. 430; *Burton Stock Car Co.* v. *Traeger,* 187 id. 9; *People's Gas Light Co.* v. *Stuckart,* 286 id. 164; Cooley on Taxation,—3d ed.—166.) Fraud in the valuation of property for the purposes of taxation cannot be presumed but must be proved by sufficient evidence. The mere fact of over-valuation will not establish fraud, but if it be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive, such facts are evidence of fraud. The assessor and the board of review have a right to take into consideration their own knowledge and information acquired by their investigations, and may compare the value of the property in question with that of other property of the same character, so as to form an honest judgment as to the value to be fixed. (*People* v. *St. Louis Merchants Bridge Co.* 291 Ill. 95.) The presumption is that the tax is just and that the officers levying it have discharged their duties. This presumption can be overcome only by clear and explicit testimony. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill. 327; *In re Maplewood Coal Co.* 213 id. 283.) The burden is upon the objector to establish fraud by clear and sufficient evidence."

As previously stated, appellant's property assessments for 1928 and 1929 were reduced by the board of review after hearings thereon, and the record warrants the statement that, taking into consideration all of the evidence offered by the objector, it has failed to show any fraud or unfairness on the part of the board of review in its effort to adjust the tax upon appellant's property.

The judgment of the county court will therefore be affirmed.

*Judgment affirmed.*