(No. 31363.—

THE PEOPLE *ex rel.* GLEN D. TENNYSON, County Collector, Appellee, *vs.* THE TEXAS COMPANY, Appellant.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

Henry I. Green, Joseph W. Corazza, Enos L. Phil-lips, and Oris Barth, all of Urbana, for appellant.

Frank Bonan, State's Attorney, of McLeansboro, and C. S. Conger, and William M. Goebel, both of Carmi, for appellee.

Mr. Justice Simpson delivered the opinion of the court:

The Texas Company, having paid its taxes in Hamilton County under protest, filed objections in the county court to the application of the county collector for judgment against the real estate of the company for the taxes for the year 1947. The county court overruled the objections and entered judgment in favor of the collector. This appeal followed.

Pursuant to the rules of the Department of Revenue, the Texas Company prepared and filed with the assessing officers a return of the property connected with its oil-and-gas leases in the various townships of Hamilton County. In arriving at the full, fair cash values of such properties, the average daily production of oil from each lease was ascertained for the month of March and then valued at the rate of $800 per barrel. On stripper wells having an average daily production of oil of four barrels or less the full, fair cash value was set at a fixed sum of $1000 for each well. The valuation of such properties computed on

this basis was then adopted as the full, fair cash value of such properties. The Texas Company, for the purpose of arriving at the assessed valuation of such properties debased the full, fair cash value in each instance by 78 per cent.

The fact that the Department of Revenue had used an equalization factor of 22 per cent in arriving at the multiplier of 4.5455 to be applied against assessed valuations the previous year, was assigned by The Texas Company as the reason for certifying the assessed value of its property at 22 per cent of its full value. It was anticipated by The Texas Company, as well as by the board of review, that a similar equalization factor would be used by the Department for the year 1947. The schedule of The Texas Company was accepted as correct by the board of review, and the revised assessment of its property was extended at the debased assessed valuation set out in the return.

While the board of review was in session, it made substantial revisions in the assessments of lands and lots in twelve townships of the county. In McLeansboro Township the total assessed valuation of lands and lots was revised downward 30.5 per cent. In Crouch Township the reduction amounted to 51.9 per cent of the total assessed valuation fixed by the local assessors. While it does not appear that the board made any blanket or percentage reduction in the total assessed valuations of the property in such townships, the average reduction of such total assessed valuations for all the townships affected amounted to 38.4 per cent. The Texas Company appeared before the board of review and requested that the board either cease its debasement of valuations of the lands and lots in such townships, or in the alternative further debase the valuations on the oil-producing properties of the company. No revision of the assessed valuations of properties connected with oil-and-gas leases, which had been already debased 78 per cent, was permitted by the board of review. After the board of review completed its work, the revised assessments became

the assessments upon which the taxes for that year were extended.

Before the county clerk could extend the taxes, it was necessary that he apply the percentage of addition or deduction certified by the Department of Revenue, to the assessed valuations of property in order to bring such property back to its full, fair cash value. The Department found that in 1947 the equalization factor of 15 per cent was necessary to be applied to the assessed valuations of the property in Hamilton County in order to bring its full, fair cash value of 100 per cent. This factor produced a multiplier of 6.6667, which was applied to the assessed valuations shown on the collector's books, and taxes were extended on the valuations so determined. The multiplier for the previous year had been 4.5455 based on an equalization factor of 22 per cent. The latter factor was the one used by The Texas Company, and accepted by the board of review as the basis for debasing the full, fair cash value of its properties in order to arrive at the assessed valuation shown on the collector's books.

It is the contention of counsel for The Texas Company that the board of review adopted a method of determining the assessed valuation of property which debased valuations of The Texas Company to 22 per cent of full, fair market value while it debased valuations of land and lots to 15 per cent of full, fair market value; that the property of The Texas Company was assessed at a higher percentage than other properties in the county were assessed; and that such inequality in assessment contravenes the requirements of uniformity demanded by the constitution.

The owner's tax schedule or return of assessments for properties connected with oil-and-gas leases is required by rule 10 of the Department of Revenue to be filed with the proper assessing officers between the first day of April and the first day of June in each year. The assessing officers are required to return the assessment books to the board

of review on or before the third Monday in June in each year. (Ill. Rev. Stat. 1947, chap. 120, par. 581.) At that time the board of review is required to meet for the purpose of revising the assessment of property as provided by the statute. The board of review in counties of 50,000 or less inhabitants is required to complete its work, enter the proper assessments in the books, and adjourn on or before the seventh day of September in each year. (Ill. Rev. Stat. 1947, chap. 120, par. 588.) One set of the books as revised by the board of review is required to be delivered to the county clerk, and the assessments so completed by the board of review and certified to the county clerk, and equalized as provided by law, are the assessments upon which the taxes of that year are extended by the county clerk. (Ill. Rev. Stat. 1947, chap. 120, par. 592.) After the county clerk receives the assessment books from the board of review, he is required to make an abstract of assessments, using the assessed valuations of such property, and transmit the same within thirty days to the Department of Revenue. (Ill. Rev. Stat. 1947, chap. 120, par. 609.

It is not until after this has all been accomplished that the Department of Revenue is called upon to equalize the assessments. Section 146 of the Revenue Act required the Department of Revenue to act as an equalizing authority and to lower or raise the total assessed value of property in any county so that such property will be assessed at its full, fair cash value. The Department is authorized to establish the full, fair cash value of the property in any county through the analysis of property transfers, property appraisals, and such other means as it may deem proper and reasonable. After ascertaining the full, fair cash value the Department is required annually to determine the percentage relationship, for each county of the State, between the valuations at which locally assessed property is listed by assessors and revised by boards of review, and the esti-

mated full, fair cash value of such property. With the ratio so ascertained and determined the Department is then required to ascertain the amount to be added to or deducted from the aggregate reviewed assessment in order to produce a ratio of assessed to full, fair cash value equivalent to 100 per cent. (Ill. Rev. Stat. 1947, chap. 120, par. 627.) It was in the exercise of this function that the Department ascertained the equalization factor to be 15 per cent for the year 1947.

It is not possible to determine what the equalization factor will be for any current tax year until the assessments of property have been completed by the assessing officers, revised by the board of review, abstracted by the county clerk and transmitted to the Department of Revenue. This process requires several months and it is readily apparent that the equalization factor ascertained by the Department of Revenue for any one year can have no bearing on what the assessed value of property in the county would be for that year.

Our State constitution, article IX, section 1, provides that the General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property. The constitutional provision precludes the taxing officials from adopting a method of valuing property whereby there is a discrimination in favor of or against any class of property. This rule applies not only to the full, fair cash value of property, but where an equalizing factor has been adopted by a taxing body or taxing officials by which property is listed for taxation purposes below its full, fair cash value, the same equalizing factor must be applied equally to other property in order to secure uniformity of taxes. *Tuttle* v. *Bell,* 377 Ill. 510.

It is contended in the instant case that the board of review adopted an equalizing factor of 22 per cent to be applied to properties connected with oil-and-gas leases, and

adopted a lower equalizing factor for lands and lots. It is urged that because an equalization factor of 22 per cent was ascertained by the Department of Revenue for the year 1946, which produced a multiplier of 4.5455 to be applied to the assessed valuation of property in Hamilton County, the adoption of an equalizing factor of 22 per cent by assessing officials the next year in listing property below its full, fair cash value, would result in approximately the same multiplier being certified by the Department.

Conversely, it is stated that the ascertainment by the Department of an equalization factor of 15 per cent for 1947 is conclusive that the assessing officials used a lower equalizing factor for debasing lands and lots in 1947 than it did for oil properties such as that owned by The Texas Company. Applying this theory, it is pointed out that the. application of the multiplier of 6.6667 to the assessed valuation of the property of the oil company, which had been debased by the application of an equalizing factor of 22 per cent, resulted in oil properties being assessed at 147 per cent of full, fair cash value, while lands and lots were assessed at 100 per cent of true value. While the mathematics of this theory may be accurate, the fallacy lies in the assumption that the assessing officials, or board, actually used a lesser equalizing factor on lands and lots than it did on oil properties. This is a question of fact.

The evidence fairly tends to show that, when the time came for the revision of assessments by the board of review, it was determined that in many instances the assessments of lands and lots were too high in proportion to other property. No percentage debasement of the valuation on lands and lots was undertaken in any township. The assessments on lands and lots were considered individually by the board of review. Some assessments were raised while many more were reduced. Section 108 of the Revenue Act gives the board of review power, after proper notice, on its own motion, to increase, reduce, or otherwise

adjust the assessment of any individual or corporation, on real property, making such changes in the valuation thereof as may be just. Ill. Rev. Stat. 1947, chap. 120, par. 589.

A. B. Anderson, clerk of the board of review, testified that while the oil properties had been debased 78 per cent of full value, lands and lots in any township in Hamilton County had not previously been debased over an average of 30 per cent; that whatever debasement occurred in the individual assessments of lands and lots for the year 1947 was the result of an effort on the part of the board of review to revise the assessments of lands and lots so they would be on the same level as the oil properties after such property had been debased 78 per cent. The effect of this testimony is that the board of review, in reviewing the individual assessments of lands and lots, did not reduce the assessed valuation of any of the lands and lots below 22 per cent of its full, fair cash value.

After the valuations were listed by the assessors, the board of review was the proper official body designated to revise and adjust the assessments of property. When the value has been fixed by the proper officers, such value is not, in the absence of fraud, subject to the supervision of the courts. *People ex rel. Ingram* v. *Wasson Coal Co.* 403 Ill. 30; *People ex rel. Gerstkemper* v. *Lots in Ashley,* 122 Ill. 297; *Keokuk and Hamilton Bridge Co.* v. *People,* 185 Ill. 276.

In the present case, no direct proof of any kind was offered concerning the full, fair, cash value of any of the lands and lots in Hamilton County. No proof was offered to show the ratio of assessed value to full, fair cash value of such lands and lots at the time the assessments were made and revised by the assessing officials. No proof was offered to show whether the assessing officers had listed lands and lots at full, fair cash value, as required by section 20 of the Revenue Act, (Ill. Rev. Stat. 1947, chap. 120, par. 501,) or had used some method of debasing such valu-

ations. The only showing concerning such values was to the effect that for the year 1947 the board of review had reduced the valuations of individual lands and lots in certain townships in an aggregate amount equal to 38.4 per cent of the total assessments listed by assessing officials. In the prior assessments for the years 1943 and 1946, it was shown that the board of review had made little change in the total valuations of lands and lots as listed by the assessors.

It has already been observed that proof offered on behalf of the county collector tends to show that the board of review used the same basis in revising the assessed valuations of lands and lots as it did in permitting the debasing of the full value of properties connected with oil-and-gas leases. In the absence of proof from which it could be determined that the full, fair cash value of lands and lots was debased at a percentage different from that applied to other properties, there is no evidence upon which fraud could be assigned. Fraud in the valuation of property for the purpose of taxation cannot be presumed but must be proved by sufficient evidence. *People ex rel. Bracher* v. *Millard,* 307 Ill. 556.

The contention that there is a lack of uniformity in the method adopted for assessing the valuation of lands and lots, as against the method used to value oil properties, seems to be based on the ground that the Department of Revenue, as a part of its duties as an equalizing authority, determined, through the means at its command, that an equalization factor of 15 per cent was the correct percentage relationship between the assessed valuations of property listed by the assessors, and revised by the board of review of Hamilton County, and the full, fair cash value of such property as estimated by the Department. In acting as an equalizing authority, the Department lowers or raises the total assessed value of property in any county

so as to make the property in such county bear a just relation to the assessed value of property in other counties. This duty is performed in order to equalize property values over the entire State and is designed to bring all properties in all counties to a 100 per cent valuation. *People ex rel. Isbell* v. *Albert,* 403 Ill. 469.

The theory advanced on behalf of The Texas Company loses sight of the recognized distinction which obtains between an "assessment" and an "equalization of assessment." In the case of *People ex rel. Little* v. *Collins,* 386 Ill. 83, we concluded that "assessment" and "equalization" are each a separate process or function, and quoted with approval from the case of *Union Pacific Railroad Co.* v. *Board of Commissioners,* 10 Cir., 35 Fed. 2d 785, 790 (*certiorari* denied in 281 U.S. 734, 50 S. Ct. 249, 74 L. ed. 1149,) where the court said: "Again, valuing property of a particular taxpayer, as a whole, is in its essence assessment of such taxpayer's property. While dealing with, and raising and lowering the value of classes or subclasses of property without reference to ownership, within a designated territorial limit, is in its essence equalization. Assessment is personal, while equalization is impersonal." Our statute specifically prohibits the Department of Revenue from reviewing, revising, correcting or changing any individual assessment made by assessment officers. Ill. Rev. Stat. 1947, chap. 120, par. 633.

The assessing officials in this case were engaged in the separate process or function of assessing the value of the property of the individual taxpayers in their respective districts. This was a function with which the Department of Revenue could have nothing to do. The presumption is that the tax is just and that the tax levying officers have performed their duties. The objector must establish by clear and convincing evidence that fraud has been committed. (*People ex rel. Schlaeger* v. *Allyn,* 393 Ill. 154.)

130

The fact that the Department of Revenue, in the exercise of its separate function of equalizing the value of property over the entire State, for that purpose may have been of the opinion that the value of property in Hamilton County was different from that estimated by the local assessing officials does not impeach the assessed value of property as listed by the proper assessing officers.

The assessments, and revision of assessments, were made by the proper assessing officers as directed by the legislature. The evidence shows that they used the same basis for debasing the full value of lands and lots as was used in debasing the full value of properties connected with oil-and-gas leases. No evidence was offered to show that the value listed for lands and lots was not the full, fair cash value of such property, or that the ratio of assessed value to full, fair cash value was not on the same basis as that applied to other properties. Under these circumstances, the county court properly overruled the objections filed by The Texas Company.

For the reasons assigned, the judgment of the county court of Hamilton County is affirmed. *Judgment affirmed.*