(No. 31815.—

THE PEOPLE *ex rel.* Charles J. Schmulbach, County Collector, Appellee, *vs.* THE CITY OF ST. LOUIS, MISSOURI, Appellant.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

GUNN, J., dissenting.

JAMES E. CROWE, and CHARLES J. DOLAN, both of St. Louis, Missouri, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellant.

RICHARD T. CARTER, State's Attorney, of Belleville, (BAKER, LESEMANN, KAGY & WAGNER, and WILLIAM P. FLEMING, both of East St. Louis, and KEVIN KANE, of Belleville, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal by the city of St. Louis, Missouri, from a judgment of the county court of St. Clair County, overruling the city's objections to a portion of the taxes assessed against its property for each of the years 1946 and 1947.

The case involves the assessments of the Illinois portion of the MacArthur Bridge owned by the city of St. Louis, sometimes known as the free bridge, across the Mississippi river. For each of the years 1946 and 1947, both the board of assessors and the board of review of St. Clair County assessed all taxable property in the county at what they determined to be 40 per cent of the full fair

cash value as of April 1 of the respective year. Appellant's property was assessed by them for each of such years at $1,932,000, which they found to be 40 per cent of its full fair cash value, said boards having determined its full fair cash value to be $4,830,000 as of April 1. The Department of Revenue found and determined that the local assessing authorities of St. Clair County had assessed the taxable property therein at only 30 per cent of its full fair cash value, and accordingly certified a multiplier of 3.3333 per cent to be applied to all assessed valuations of St. Clair County, as revised and corrected by the board of review, the application of this multiplier being certified as necessary in order to bring the assessed valuations of all property in the county to such property's full fair cash value of 100 per cent.

After the Department of Revenue had certified to the county clerk the multiplier for such respective year, the county clerk each year multiplied the assessed value of each parcel of real estate in the county by 3.3333 per cent, and then extended the tax rates of the various taxing bodies against the property on the basis of the higher valuations thus obtained. This multiplier of 3.3333 per cent was produced by using an equalization factor of 30 per cent. The application of this multiplier to appellant's property resulted in a final assessment of $6,439,935, as its full fair cash value; whereas if the Department of Revenue, in arriving at the multiplier to be applied against assessed valuations, had used as the equalization factor the same percentage as that used by the board of assessors and board of review as a debasement figure, namely, 40 per cent, this would have resulted in a multiplier of 2.5 per cent and a final assessment of appellant's property at $4,830,000 as its 100-per-cent valuation.

The city each year paid voluntarily and without protest the amount of taxes which would be due on an assessed valuation of $4,830,000, and each year paid under

protest and filed objections to the taxes extended on an assessed valuation in excess of that amount, the taxes objected to being that portion of the taxes extended against its property which would be due on $1,609,935 of the assessed valuation thereof. By its objections the city alleges that the full fair cash value of its said bridge property as of April 1 did not exceed the said sum of $4,830,000; that the said valuation of $6,439,935 upon which the taxes were extended is one third more than its full fair cash value and is to the extent of $1,609,935, excessive, fraudulent, unconstitutional and in violation of law; that prior to the certification of said multiplier by the Department of Revenue, the city had no knowledge of the said multiplier found by the Department, that it had no opportunity to present to the Department any objections to the multiplier so certified or in any way to contest the amount of such multiplier, and that after the certification of such multiplier it had no opportunity or remedy in any way to secure a reduction of its assessment so that the application of the multiplier thereto would result only in a 100 per cent assessed valuation of its property. The city by its objections further charges that the assessment as finally made against its property, upon which assessment the taxes for each of such years were extended, is arbitrary, excessive, fraudulent, unconstitutional, discriminatory, erroneous and void; that said assessment violates section 1 of article IX of our State constitution, which requires every person and corporation to pay a tax in proportion to the value of his, her or its property; and that by reason of such assessment, the city of St. Louis had been denied the equal protection of law, in violation of the fourteenth amendment to the constitution of the United States, and has also been denied due process of law, in violation of said fourteenth amendment and in violation of section 2 of article II of the constitution of Illinois. The objections to the taxes for 1947 also charge that sections 146, 149,

and 151 of the Revenue Act of 1939, under the authority of which the Department of Revenue determined and certified the multiplier for the year 1947, (Ill. Rev. Stat. 1947, chap. 120, pars. 627, 630 and 632,) are unconstitutional, and that said multiplier was not determined by the Department of Revenue as provided by said section 146, inasmuch as the only analysis made by the Department in connection therewith was with reference to real-estate transfers, no appraisals of property or sales of personal property being considered.

The two cases were consolidated and tried together in the county court. The court overruled the objections and entered judgment for the amounts of the taxes in controversy. From that judgment this appeal is prosecuted.

At the hearing in the county court it was stipulated that the collector had established a *prima facie* case. The city introduced evidence, but no evidence was introduced by the collector. The evidence produced by the city consisted of the testimony of John J. Costello, clerk of the board of review and the board of assessors during the years 1946, 1947, and 1948; Ben Emge, a member of the board of assessors, and Herb Schwinn, a member of the board of review, both during the above-mentioned three years; John Delabor, auditor in the comptroller's office in the city of St. Louis; Guido Moss, manager of the research and schedule department of the St. Louis Public Service Company and a former employee of the city as public utility engineer, and A. R. Ross, the superintendent of the MacArthur Bridge.

Costello testified that the board of assessors assessed the Illinois portion of the MacArthur bridge at $1,932,000, and that this amount represented 40 per cent of its full fair value, that the board arrived at this assessment by estimating the amount they considered to be the full value as $4,830,000 and then taking 40 per cent thereof, and further testified that in his opinion the full cash market

value of this part of the bridge on April 1, 1946, was $4,830,000.

Schwinn and Emge testified that the board of assessors for the years 1946 and 1947 assessed the Illinois portion of the bridge at $1,932,000, which was 40 per cent of what was determined to be its full fair cash market value on April 1 of those years, that they determined that its full fair cash market value on those dates, according to their best judgment, was $4,830,000 and then took 40 per cent of it as its assessed valuation, and that all other property in the county was handled in the same manner, that is, by determining what in their judgment they considered to be the full fair cash market value and then assessing the property at 40 per cent of such value. The witness Emge testified to the same procedure followed by the board of review.

Delabor testified that the total income from the whole of the bridge during the fiscal year 1945-1946 was $1,519,-772.72, during the fiscal year 1946-1947, $1,583,878.55, and during the fiscal year 1947-1948, $1,551,545.82; that the total amount expended during the first of such fiscal years in connection with the bridge was $408,362.04, which amount included $66,050 for bond interest and maturities and $121,930.77 Illinois taxes, and that after deducting all amounts expended the net balance from the bridge for that year was $1,111,410.68; that the total expenses for the fiscal year 1946-1947 were $450,491.23, of which $59,550 represented bond interest and maturities and $127,055.21 represented taxes, leaving a net balance of income for that year of $1,133,387.32; that the total expenses for the year 1947-1948 were $574,981.87, which included $53,200 for bond interest and maturities and $162,217.73 for Illinois taxes, and that the net income from the bridge for that year was $976,563.95. He further testified that if the bridge had not been municipally owned, there would have been other expenses, estimated

as amounting in the first of said fiscal years to $18,955 for services rendered by the city, $75,988.64 for franchise tax, and $586,029.48 for excess profit tax; in the second of said fiscal years estimated as $19,855 for a survey by the city, $79,193.83 for franchise tax, and $393,048.59 for income tax; and for the third of said fiscal years estimated as $19,855 for services by the city, $77,577.29 for franchise tax and $334,070.03 for income tax, and that these additional expenses reduce the net income for the first of said years to $429,537.56, the net income for the second of said years to $641,289.90, and for the third of said fiscal years to $545,061.63; and that if the net earnings of the bridge, based upon these figures, were capitalized at seven per cent, which the witness considered to be the usual and reasonable amount allowable for a return, the capitalized earning value of the entire bridge during the fiscal year 1945-1946 would be $6,136,251, and the capitalized value of the Illinois portion, which he figured as 52 per cent of the whole, would be $3,190,850.52; that the value of the Illinois portion capitalized at seven per cent would be $4,763,861.96 for the fiscal year 1946-1947, and for the fiscal year 1947-1948, $4,050,367.36.

Moss testified that he had made no physical examination of the structure of the bridge, but that upon investigation he found the original cost of that part of the bridge within the State of Illinois was $5,236,000, and that taking into consideration his knowledge and information concerning the bridge and the element of depreciation, which he roughly estimated to be $1,800,000, he was of the opinion that $3,500,000 was the full value of the Illinois portion as of the first day of April in each of the years 1946, 1947 and 1948.

The witness Ross testified that the original cost of that portion of the bridge situated in Illinois was $5,254,737.93; that applying depreciation rates to such original value, the depreciated value thereof as of 1946 was $3,526,027.73;

that the annual depreciation would be $104,868.73, and consequently the depreciated value as of 1947 would be that much less than the depreciated value as of 1946. However, he testified that the present day reproduction cost of the structure would be double the amount of the original cost.

The sole contention made by appellant in this court, as well as the sole contention made by it upon the trial of the cause, is that the assessed valuation of $6,439,935, upon which the taxes against its property were extended, is, to the extent of $1,609,935, so excessive as to constitute constructive fraud. It does not complain that its property is assessed at a higher per cent of its full value than other property in the county, nor that the Department of Revenue in determining the multiplier failed to follow the procedure required by the statute nor that said statute is invalid. Neither does the city make any claim or any showing that it was required to pay any more in taxes by reason of the application of the multiplier certified by the Department than it would have been required to pay by reason of the application of a less multiplier.

The taxation of property is a legislative not a judicial function. The constitution provides that the General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct and not otherwise. Courts have no power to fix the value of property for taxation, and in the absence of fraud, no power of supervision over such valuation when fixed by the persons to whom the legislature has delegated the duty of determining values. (*People ex rel. Nash* v. *Norton*, 358 Ill. 272; *People ex rel. Smith* v. *National Plate Glass Co.* 344 Ill. 340.) The mere fact of overvaluation will not of

itself establish fraud. (*People ex rel. Nash* v. *Norton,* 358 Ill. 272; *People ex rel. Smith* v. *National Plate Glass Co.* 344 Ill. 340; *People ex rel. Bracher* v. *Millard,* 307 Ill. 556; *People ex rel. Thompson* v. *Bourne,* 242 Ill. 61.) The assessed value of property for taxation purposes as fixed by proper assessing officers cannot be impeached merely because of a difference in opinion as to its value between the assessing officers and the court. (*People ex rel. Johnson* v. *Robison,* 406 Ill. 280.) If property has been assessed higher than it should have been through a mere error of judgment on the part of the officers making the valuation, the courts are powerless to rectify the error and can only relieve against fraud. (*People ex rel. Smith* v. *National Plate Glass Co.* 344 Ill. 340; *People ex rel. Thompson* v. *Bourne,* 242 Ill. 61; *Keokuk & Hamilton Bridge Co.* v. *People,* 145 Ill. 596.) It is not necessary, however, in order to have an assessment set aside in the collector's proceeding, to show fraud in its generally accepted meaning, but if the facts show that the taxing authorities have assessed the property for taxation purposes at a valuation grossly in excess of its actual value, and that such assessment was deliberately and willfully made, such conduct amounts to constructive fraud, and the court will intervene to protect the taxpayer against the wrong undertaken to be perpetrated against him. (*People ex rel. Wangelin* v. *Wiggins Ferry Co.* 357 Ill. 173.) But in such cases there must be a showing that the assessing officers were not acting in good faith or that knowledge was brought to their attention of facts and circumstances which would indicate that there was a gross overassessment of value of property. The duty of assessing property is placed upon the tax officials and courts are not at liberty to reassess because they may believe there is some inequality, unless the difference is established to be so gross, without basis in law or fact, as to amount to constructive fraud. (*People ex rel. Johnson* v. *Robison,* 406 Ill. 280.)

Whether there is fraud on account of an excessive valuation will depend largely upon the circumstances of each particular case. (*People ex rel. Nash v. Norton,* 358 Ill. 272.) The burden is on the taxpayer to show actual fraud, or that the valuation is so excessive that it is not the result of a mistake of judgment. (*People ex rel. Harding v. Atwater,* 362 Ill. 546.) The presumption is that the tax is just and the burden is on the taxpayer to establish by clear and convincing evidence that fraud has been committed in the valuation of his property for taxation purposes. *People ex rel. Johnson v. Robison,* 406 Ill. 280; *People ex rel. Tennyson v. Texas Co.* 406 Ill. 120; *People ex rel. Schlaeger v. Allyn,* 393 Ill. 154; *People ex rel. Toman v. Olympia Fields Country Club,* 374 Ill. 101.

The city of St. Louis, as the objecting taxpayer in the present case, to support its claim that the valuation of its property for taxation purposes resulting from the application of a multiplier is so grossly excessive as to amount to constructive fraud, relies upon the testimony heretofore set out. The witnesses testifying who were members of the board of assessors or board of review merely testified that in the opinion of such local assessing bodies the full value of the property in question was $4,830,000, and that they assessed this property, as well as all other property, at 40 per cent of its full value.

The witness Delabor estimated the value of the bridge during the city's fiscal years of 1945-1946, 1946-1947, and 1947-1948, as capitalized at seven per cent of its net earnings, and in computing the net earnings upon which such capitalization was based included among the deductions bond interest and maturities for each of such years. The collector contends and the city does not deny that these bonds are bonds issued by the city for the support and maintenance of poor persons and for poor relief, but even if this were not so, bonds and interest thereon, whether the bonds were issued to raise money for the support

of the poor, or for the construction or maintenance of the bridge, or for any other purpose, would certainly not be a proper deduction in arriving at net income. Furthermore, this court in *People ex rel. Johnson* v. *Robison,* 406 Ill. 280, has recognized that in tax cases a less percentage than seven per cent is proper in the capitalization of property upon the basis of net earnings. In that case a taxpayer's lot was assessed at a valuation of $32,913 for the land, alone. The taxpayer objected that this assessed valuation was so excessive as to amount to fraud. This court in holding against this contention, among other things, said: "The rental value must also be taken into consideration. Even with the full amount of taxes deducted the property shows a net income of approximately $1300 per year, which would show a four per cent return upon a valuation of over $32,000. We are bound to take judicial notice of the fact that in recent years the return from real-estate investments is far less than in former years, and, consequently, such matters must be taken into consideration in arriving at the value of property." In the instant case, if the amount expended each year from bridge earnings for bond interest and maturities be eliminated in computing deductions, but all other deductions used by the witness Delabor in computing net income be allowed, including those not expended but which the witness estimated as necessary expenditures had the bridge been privately owned, the net income would show a return of four per cent upon a valuation of $6,442,-638.28 for the Illinois portion of the bridge for the fiscal year 1945-1946, of $9,111,528.40 for the fiscal year 1946-1947, and of $7,777,401.32 for the fiscal year 1947-1948.

The two witnesses, Guido Moss and A. R. Ross, arrived at the respective valuations to which they testified by applying depreciation rates to the original cost of construction. Moss used the figure of $1,800,000 for the total depreciation and estimated the value as $3,500,000 during each of the years 1946, 1947, and 1948. Ross figured

depreciation at the rate of $104,868.73 per annum, giving the value on April 1, 1946, as $3,526,927.73, and the value on April 1, 1947 as $104,868.73 less; but he stated that the reproduction cost would exceed $10,000,000.

We do not feel that the evidence in this case is sufficient to warrant the conclusion that the final assessment of the city's property for taxation purposes is so grossly excessive that it constitutes constructive fraud. In our opinion the city has failed to sustain the burden imposed on it of establishing by clear and convincing evidence that constructive fraud was committed against it by the Department of Revenue in ascertaining and certifying the multiplier to be applied to the assessed valuations of all taxable property in St. Clair County, including that of the taxpayer, the city of St. Louis. This is so because the taxpayer has not established by clear and convincing evidence that the application of the multiplier to the assessed valuation of its property, as determined by the board of assessors and approved and adopted by the board of review, has resulted in a final assessment of its property at a value grossly in excess of its actual value, and because there is nothing in the record to indicate, and the taxpayer makes no contention, that the determination of the multiplier was not made in the exercise of honest judgment or that the Department of Revenue committed any act of discrimination against the taxpayer.

The city cites numerous decisions of this court and several decisions of the Federal courts, all of which, however, are readily distinguishable from the instant case. In *People ex rel. McCallister* v. *Keokuk & Hamilton Bridge Co.* 287 Ill. 246, the assessment against the property of the bridge company showed a very great disparity and discrimination as compared with the assessment of all other property, which could not reasonably have arisen from an error of judgment. In the present case, as we have pointed out, there is no showing or claim of any dis-

parity or discrimination as compared with the assessment of other property, but the evidence is undisputed that all property in the county was valued by the local assessing bodies at the same percentage of its full value and that all such valuations were raised in the same proportion by the application of the multiplier certified by the Department of Revenue. In *People ex rel. McCallister* v. *Keokuk & Hamilton Bridge Co.* 295 Ill. 176; *People ex rel. Bracher* v. *Orvis,* 301 Ill. 350; *People ex rel. Harding* v. *Atwater,* 362 Ill. 546; *People ex rel. Isbell* v. *Albert,* 403 Ill. 469; and *People ex rel. Tennyson* v. *Texas Co.* 406 Ill. 120, the taxpayers' objections on account of alleged excessive valuations were overruled by this court. In *Bistor* v. *McDonough,* 348 Ill. 624, a suit was filed in equity by more than 5000 owners of real estate, seeking to enjoin the collection of the taxes against their real estate on the ground that real estate in the county was assessed higher proportionately than personal property, and this court denied the relief sought, holding that the appropriate remedy was *mandamus* against the board of review and not injunction against the collector. The cases of *Board of Supervisors* v. *Chicago Burlington & Quincy Railroad Co.* 44 Ill. 229, and *Chicago & Northwestern Railway Co.* v. *Board of Supervisors,* 44 Ill. 240, were each cases where the railroad company, under the law of 1861, then in force, had appealed to the circuit court from the assessment against its property, claiming it was assessed at a greater proportion according to value than that of other property. In the *Bureau County case* the evidence sustained the company's contention, but in the *Boone County case* the judgment in favor of the company was reversed and the cause remanded because of errors committed in the court below. The many other cases cited are all cases where the taxpayer's property had been as-sessed for taxation at a higher percentage of its actual value than that at which other property in the county was

assessed. In *People ex rel. Wangelin* v. *St. Louis Bridge Co.* 357 Ill. 245, the property of a bridge company had been arbitrarily valued by the assessing authorities grossly in excess of its actual value, and it was apparent from the evidence that the assessment was the result of a public clamor for a higher assessment of the bridge company's property and not the result of a determination by the assessing authorities of what they considered to be its actual value. In *People ex rel. Nash* v. *Northwestern Mutual Life Ins. Co.* 361 Ill. 248, an objection to the amounts extended for "loss and cost" in the collection of taxes was sustained because the amounts assessed therefor were unreasonable and based upon an improper conception of the law. In *People ex rel. Clarke* v. *Jarecki,* 363 Ill. 180, a *mandamus* suit to compel the county judge to approve a settlement of delinquent taxes was dismissed because of the unconstitutionality of the statute under the authority of which the settlement was made. *People ex rel. Little* v. *St. Louis Electric Bridge Co.* 290 Ill. 307, above referred to, in addition to the bridge company's objection to the taxes against its real property, also involved an objection to the assessment of its capital stock, which assessment had been made by the State Board of Equalization in violation of its own rules. *Chicago, Burlington & Quincy Railroad Co.* v. *Cole,* 75 Ill. 591, was a suit to enjoin the collection of a tax and it was admitted that the valuation upon which the tax was extended exceeded the real value which ought to have been assessed. In *Pekin Loan Co.* v. *Soltermann,* 365 Ill. 460, this court affirmed an injunction against the collection of a tax. In that case the taxpayer was indebted to the extent of the value of its credits, but the board of review had refused to accord to the taxpayer the amount of such indetbedness as a deduction against credits, and this court held that such action on the part of the board of review amounted to the levy of an assessment against the taxpayer upon property which

it did not own and that the levy was therefore without authority of law.

The city also cites *People ex rel. Wangelin* v. *City of St. Louis,* 367 Ill. 57, where this court approved and adopted an assessed valuation of $1,500,000 as 40 per cent of the full value of the Illinois portion of the MacArthur Bridge, then known as the St. Louis Municipal Bridge, for the year 1933, making the full value of the bridge for that year, as found by this court in the cited case, the sum of $3,750,000. However, it does not follow that because this court found the full value of the property in 1933 did not exceed the sum of $3,750,000, therefore its full value in 1946 and 1947 did not exceed the sum of $4,830,-000. It is a matter of common knowledge, of which this court will take judicial notice, that property values were greatly depressed during the year 1933 and considerably inflated during the years 1946 and 1947. Furthermore, it appears from the evidence in this case that additions and improvements to the Illinois portion of the bridge have been constructed since 1933, the so-called Valley Junction approach and deck and track being constructed in 1937 and an addition to the widening of the bridge being constructed in 1939.

The city contends that the Department of Revenue erred in certifying a multiplier of 3.3333 per cent and that it should have certified a multiplier of not more than 2.5 per cent.

In *People ex rel. Ingram* v. *Wasson Coal Co.* 403 Ill. 30, the coal company claimed that the assessed valuation of its property as equalized by the multiplier certified by the Department of Revenue exceeded its full value, and this court in holding that the taxpayer had made no showing that its taxes were increased by the application of the multiplier, said: "The only occasion when an application of a multiplier will increase the tax of the taxpayer, (and then such tax will be increased only in proportion to in-

creases on other property throughout the entire county,) is when the amount of money requested by the taxing bodies requires a rate per cent on assessed values prior to the application of the multiplier which is higher than the maximum tax rate limit allowed by law. Then, and then only, can the tax be increased by reason of the application of the multiplier. The appellant here does not contend or argue that this has been the situation in the instant cause. It offers no proof that its tax has been increased by reason of the application of the multiplier nor does it state that the tax rate limit was exceeded by reason of the application of the multplier. It has not shown that it has paid any more tax on the $300,000 assessment than it would have paid on the assessment of $60,000. We are entitled to assume that the tax rate limit would not have been reached under whatever valuation had been placed on the property and that appellant would have paid the same tax on the $60,000 assessment as it would pay under the $300,000 assessment."

Likewise, in the instant case, the objecting taxpayer, the city of St. Louis, offers no proof that its tax is greater by reason of the application of a multiplier of 3.3333 per cent than it would have been by reason of the application of a multiplier of 2.5 per cent. Nor does the city state that the tax rate limit was exceeded by reason of the application of the multiplier of 3.3333 per cent. This court is entitled to assume that the tax rate limit would not have been reached under whatever valuation had been placed on the property. *People ex rel. Ingram* v. *Wasson Coal Co.* 403 Ill. 30.

For the reasons stated herein, the judgment of the county court of St. Clair County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN, dissenting.